363 S.W.2d 82 (1962)
The UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, DISTRICT COUNCIL OF KANSAS CITY AND VICINITY, an Unincorporated Labor Association, by J. O. Mack, Its President, W. C. Munroe, Charles Brewer, Daniel O'Connell, R. F. Addington and Henry O. Selig, Petitioners-Respondents,
v.
The INDUSTRIAL COMMISSION of Missouri, Defendant-Appellant.
In the Matter of Special Wage Determination No. 1041 for the School Board of District R-11, Galena, Stone County, Missouri.
No. 23637.
Kansas City Court of Appeals, Missouri.
October 1, 1962.
Motion for Rehearing or to Transfer Denied November 14, 1962.
*83 Lloyd G. Poole, Jefferson City, for appellant.
Gibson Langsdale, Kansas City, for respondents.
Motion for Rehearing or to Transfer to Supreme Court Denied November 14, 1962.
DEW, Special Commissioner
On a petition to review an order of the Industrial Commission of Missouri, in a proceeding under the statutes to determine the prevailing wage rate to carpenters in Stone County, Missouri, the Circuit Court of Jackson County, Missouri, remanded the cause to the Industrial Commission for further proceedings consistent with such judgment.
Present Section 290.220, RSMo 1959, V. A.M.S., effective at all times concerned in this proceeding, established the policy of Missouri requiring a wage rate "no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is to be performed, shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work".
*84 Sections 290.210 to 290.310 prescribe the procedure for the determination of such hourly rates upon the application therefor to the Department of Labor and Industrial Relations, prior to the awarding of any contract for the construction of the public project. Insofar, however, as a review of such determination by the court is concerned, such procedure is subject to Chapter 536 of the Compiled Statutes, V.A.M.S. regulating administrative procedure. Section 290.260, subd. 7. In such proceedings the Department acts by and through the Industrial Commission. Chapter 286, RS Mo 1959, V.A.M.S.
Reference will be made hereinafter in greater detail to one or more of the foregoing statutes as occasion requires.
The record discloses the following undisputed facts:
The School Board of District R-II, Stone County, Missouri, contemplated the construction of a new gymnasium and a new class room at Galena, Stone County, for which funds in the amount of $110,000 had been made available by the district. Pursuant to the statutes first above referred to pertaining to prevailing wage rates, the School Board, on October 16, 1958, requested of the appellant (hereinafter referred to as the "Commission") a determination of the prevailing hourly rate of wages for various crafts specified, for work of a similar character in the locality. Such determination was necessary for incorporation of the wage rate in the ordinance calling for bids and in any contracts to be let on the job. Section 290.250. The present proceeding relates only to the prevailing hourly rate for carpenter work.
On October 23, 1958, the two commissioners present (one not sitting) certified to the School Board the Commission's decision in the proceeding, which was designated as Determination No. 1041, finding that the prevailing rate for carpenters in the locality for work similar to that to be performed in the school house project to be $1.50 per hour.
On November 19, 1958, the respondents (hereinafter referred to as the "Objectors"), filed objections to the Commission's determination referred to, and contended that the proper prevailing rate in question was from $2.65 to $2.75 per hour on a 40 hour work basis, 8 hour day and time and a half for overtime. Upon notice given, the objections were heard by the Commission on January 13, 1959.
At this juncture we note a material provision of this novel administrative proceeding, explanatory of the status of the Objectors. Section 290.260 requires the Department of Labor and Industrial Relations to make annual determinations about July 1, of the prevailing rates of wages in the various crafts in the "localities", which rates shall remain in effect until superseded by new determinations and, in so doing, "the department shall ascertain and consider applicable wage rates established by collective bargaining agreements, if any, and such rates as are paid generally within the locality". Subparagraph (7) of the above section accords to any person affected by any such determination, whether or not such person has participated in the original determination proceeding, the right to have the same reviewed by the court. The present Objectors, composed of certain individual members of the carpenter craft in Stone County, Missouri, and others represented by their labor union organization, assert that they are interested parties in the present review of the determination of the prevailing hourly rate of wages paid in the locality for carpenter work. Such, as we have seen, is authorized by statute.
Certain further limitations, restrictions, definitions and other provisions are contained in the statutes which clarify the nature and scope of the hearing of the objections in the case. Section 290.210 defines "locality" to be "the county where the physical work upon public works is performed, except that if there is not available in the county a sufficient number of competent skilled laborers, workmen and mechanics to construct the public works efficiently and properly, *85 `locality' may include two or more counties adjacent to the one in which the work or construction is to be performed and from which such workers may be obtained in sufficient numbers to perform the work * * *." At such a hearing of objections conducted by the Department by and through the Industrial Commission, under authority of Chapter 286, RSMo 1959, V.A. M.S., the Commission may introduce in evidence its previous investigation, if any, and "such other facts which were considered at the time of the original determination which formed the basis for its determination. The Department (Industrial Commission) or any objectors thereafter may introduce such evidence as is material to the issues." Section 290.260, subd. 5.
At the hearing of the objections in the present case the Commission introduced as evidence the record therein to date, and the entire transcript of a previous hearing before it in another case, also held in Stone County (at Crane) Missouri, on October 9, 1958, known as Determination No. 710. That hearing likewise involved the prevailing wage rate for carpenters on a school building, namely the construction of a new elementary school in the town of Crane, at an estimated cost of $120,000. In addition, the Commission introduced a letter from Wilson Lumber Company of Crane, stating that the prevailing hourly wage rate in Stone County for carpenter work was $1.50 and an affidavit by one Don Eubanks to the same effect.
The record of the prior hearing No. 710, introduced as evidence in the present proceeding, as stated, discloses the fact that the Commission in that case had first ruled that the prevailing hourly rate of wages to carpenters in Stone County, Missouri was $2.65 per hour and for carpenter foremen, $2.90; that thereafter, upon objections filed by the School Board in that case the finding was modified to $1.50 per hour for carpenters; that thereupon objections were filed to the modified determination in that case by the same union as the one objecting in the present case, and it contended therein that the rate should be $2.65 per hour for carpenters. The final determination in that prior case reaffirmed the finding of the Commission of $1.50 per hour for carpenters, from which no appeal was taken.
The transcript in the previous case No. 710, referred to, included also the testimony of 10 witnesses on the question of the prevailing rates of wages per hour to carpenters in Stone County, Missouri. According to their testimony all of them were residents of Stone County or nearby, and had had experience in the carpenter trade in the building of houses and other structures over various numbers of years. Some stated they had worked as carpenters on schools, commercial buildings, houses, motels, library and other structures in Stone County; some said they did work on jobs other than carpenter work when it was necessary; some testified they devoted parts of seasons to operating farms or raising cattle. One witness estimated that 75 percent of the carpenters in Stone County made their trade their chief occupation. Their testimony was that the prevailing rate paid them for carpenter work in Stone County was $1.25 to $1.50 per hour; that no overtime was charged or paid, and that the 8 hour day and 40 hour week were observed.
In the present case, at the hearing of the objections, the Commission also introduced two photostatic copies of statementsone from a carpenter and one from a contractorto the effect that $1.50 was the prevailing rate per hour to carpenters in Stone County.
The School Board also introduced at the hearing of the objections in the present case 6 witnesses, all of whom lived in Stone County and all of whom testified that they either did carpenter work in that county in recent years or had supervised carpenter work there, or had employed carpenters on jobs in that county. The various jobs described were a 15-unit motel, a 5-unit motel, resort cabins, dwellings, barns, beauty shops and house repairs. Some testified that they operated their farms or cafe or had other *86 occupations for part time. Some said they assisted in other work than carpenter work on jobs when necessary. They all said that the rate of wage paid to them for carpenter work was from $1.25 per hour to some, and $1.50 to others.
In behalf of the Objectors there was introduced a copy of a collective bargaining agreement (Objectors' Exhibit No. 17) between the Associated General Contractors of Springfield, Missouri, and the union (Objector herein), dated July 23, 1957, covering commercial or industrial work done by its members in an area including Stone County, which contract provided for an hourly wage beginning July 9, 1957, of $2.775 to carpenters performing residential and industrial work and $2.50 per hour for residential work, with provisions for increases after June 1, 1958 and June 1, 1959. Also there was introduced a list of names of members of the union who lived in Stone County, Missouri.
Thirteen witnesses testified in this case on behalf of the Objectors as to the prevailing rate of wages to carpenters in Stone County. According to their testimony 12 of them were members of the Carpenters' Local Union No. 738 at Springfield, Missouri; practically all of them followed no other occupation than the carpenter trade; most of them had been employed on the Table Rock Dam project, or Kimberling Bridge; about one-third of them lived in Stone County, Missouri; their work on the two projects named had consisted largely of building and setting wooden forms for concrete for the piers and other concrete construction; some had done work on schools in other counties. They testified that the rate of wages paid and received by them on those jobs was $2.65 per hour for carpenters and $2.90 for foremen, with time and a half for overtime. On one job, under certain conditions, the foreman said he received $3.32½ per hour.
The Objectors introduced 15 signed statements of hourly wage rates paid to carpenters on various projects. Ten related to construction in Stone County. Seven specified bridge construction and the estimated cost of the projects named ranged from $440,000 to $1,185,000 in round numbers. One bridge construction job was in adjoining Barry County, with an estimated cost of $660,000. The probable cost of the highway construction work referred to was from $57,692 to $450,000. The rate of wages paid to the carpenters on these jobs was shown to range from $2.57½to $2.775 per hour. One job mentioned was a shoe factory in Monett, Missouri, at a cost of about $450,000.
It appears undisputed that the construction of the Table Rock Dam, Kimberling Bridge and the Cape Fair Bridge, on which many of Objectors' witnesses had been employed at the hourly wages mentioned, were federal projects done under authority of the United States Army Corps of Engineers, and that the federal agencies made the wage rate determinations on them.
On January 23, 1959, the Commission, by a majority of its members (one dissenting), made its "Final Determination After Public Hearing" in the present case. The report reviewed the proceeding, as hereinabove described, including a résumé of the evidence received in the matter. In the finding of facts it found that the term "prevailing hourly wages" means "the wages paid generally in the locality (county) in which the public work is being done or to be done, to workmen engaged in work of a similar character"; that Stone County, Missouri, was the "locality" in this case, and that the wage rate to be determined is that which is paid to carpenters only
The Commission in its decision stated that it "took judicial notice" under Section 536.070, that the construction work done on Table Rock Dam, Kimberling Bridge and Cape Fair Bridge was done by the United States; that the Commission is not authorized or obliged to make wage determinations for such projects; that such projects are not similar but dissimilar to the $110,000 school project at Galena, *87 Missouri, which is to be paid for by the local School Board district property owners in School District R-II. The determination further stated that the carpenter rate in the instant case was $1.50 per hour based on testimony of witnesses living and working in Crane and Galena, Stone County, Missouri; that carpenter work on highway construction was dissimilar to that on the school building under consideration and is done under contract with the Missouri Highway Commission, under an annual wage determination by this Commission and is based on collective bargaining agreements made between large numbers of contractors and various interested unions; that the local taxpayers had no notice of such collective bargaining agreements made in Stone County, and are entitled to a voice in determining the cost of their proposed school project to be paid for by them, and whether or not they desire to proceed with it.
The Commission further found that, according to the evidence, Table Rock Dam employed as many as 1500 carpenters and many more were employed on Kimberling Bridge and Cape Fair Bridge; that the wages paid to workers on such large federal projects were not the proper measuring stick in determining the proper prevailing wage scale on a locally taxed project such as under consideration, but that if it were, the prevailing rate beyond question would be $2.65 per hour. The determination concluded with a finding that reaffirmed its previous finding that the prevailing wage rate to carpenters in Stone County, Missouri, for similar work was $1.50 per hour. It stated, however, that a higher rate could be paid in conformity with the law.
Upon the filing of the Commission's final determination, the Objectors filed their petition for review by the court. It alleged that the determination was not supported by competent and substantial evidence upon the whole record and was unauthorized by law; that the findings were arbitrary, capricious and unreasonable; that the Commission received and used as evidence testimony of persons not competent and skilled in carpenter work, many of whom did not engage solely in carpenter work as their means of livelihood; that the Commission rejected and refused to consider the evidence of persons competent and skilled and engaged solely in the carpenter trade for a livelihood; that the Commission rejected and ignored evidence which established that carpenter work on the school building in question was similar to carpenter work shown in evidence to be done on bridges, powerhouses, dam and other construction projects in Stone County, Missouri; that the Commission refused to consider evidence relating to wage scales for carpenters established by collective bargaining agreements applicable to Stone County, Missouri ; that the competent and substantial evidence was that the existing prevailing wage rate for carpenters in Stone County, Missouri, for similar work was $2.65 per hour and not $1.50, as found by the Commission.
The petition for review further alleged that the action of the Commission did not involve the exercise of administrative discretion, but only the application of the law to the facts; that the court should weigh the evidence for itself and determine the facts accordingly from its own review of the evidence; that the opinion of the dissenting commissioner is correct and justified.
The answer of the Commission to the petition for review admitted the uncontroverted portions of the petition and specially denied that the court could weigh the evidence and determine the facts for itself, and denied that the court could substitute its discretion for that vested by law in the Commission. It averred that, based upon the whole record, the Commission could reasonably have made its findings and reached its results; that such finding of facts was supported by competent, material and substantial evidence and is conclusive upon the court.
*88 The case was submitted to the court on June 19, 1959. Thereafter three additional petitioners were added. On September 7, 1960, the court rendered its decision. The court in the first paragraph of its opinion in the case found that the "Commission could reasonably have made the finding of facts and reached the conclusions of law that it did, based upon the whole record, but that the Industrial Commission did not consider all competent evidence before it". The opinion proceeded to declare that the Commission should consider wage rates established by collective bargaining agreements as well "as such rates as are paid generally within the locality as provided by Section 290.260, and neither element should be regarded as more than a factor by the Commission in making its determination". The opinion further stated that there was no evidence before the Commission that would justify a decision that there was an inadequate supply of carpenters in Stone County, Missouri, and that consequently the "locality" as defined by Section 290.210, subd. 4 must be construed in this case to be Stone County, Missouri. The court further ruled that Sections 290.210 et seq. do not provide that "Federal projects mentioned in the evidence and the wages paid to workers on such works should be used as the proper measuring stick in determining the wage scale to be paid for this locally taxed project"; that "the Commission should not regard such wages so paid as the proper measuring stick in determining the prevailing wage for carpenters in Stone County, Missouri, but merely as one of the factors to be considered in making such determination".
The court further found that the questions involved were not moot because of the subsequent completion of the school project, since under Section 290.260, the determination remains in effect until superseded by a new determination. The final ruling was that the cause be remanded to the Commission for further proceedings consistent with the views expressed in the opinion. Motion for new trial having been overruled, this appeal was perfected.
Because of its nature we direct our attention first to the second point of error urged by the Commission. That point is that it was error for the court to remand the case when the court found and stated in its opinion that "the Industrial Commission could reasonably have made its findings of facts and reached the conclusions of law that it did, based upon the whole record, but the Commission did not consider all competent evidence before it". Under such ruling, appellant asserts, the only function of the court was to affirm the Commission. It is true that such a general statement by the court of its findings and disposition of the case is, if literally construed, self-contradictory and paradoxical. If it be correct, as the court found, that "the Commission could reasonably have made the findings of fact and reached the conclusions of law that it did, based upon the whole record", then the fact that it failed to consider a part of the record could not have affected the reasonableness of the Commission's determination, and the court's only function would be to affirm the ruling of the Commission. Had the court ruled that the failure by the Commission to consider a part of the record could have reasonably authorized a different determination, the situation would have been different.
However, since the court proceeded to rule that the Commission did not consider all the competent evidence before it and infers that such evidence was the collective bargaining agreement in evidence, and thereupon remanded the case, we conclude that the language quoted was not intended to be construed in the inconsistent sense attributed to it by the Commission.
The remaining point assigned by the Commission is that, based upon the whole record, the Commission could reasonably have made its findings of fact and reached its conclusions, and the court therefore *89 erred in not affirming the determination. Under that heading it is asserted that, in arriving at its determination of the prevailing rate of wages to be paid to carpenters on the school house job at Galena, the Commission considered all the relevant factors such as (1) the wages generally paid in the locality in which the public project was located for services similar in character and (2) if there were applicable wage rates established by any collective bargaining agreements; and that in the exercise of its administrative discretion it could reasonably have found from the evidence, as it did, that the services on the highway construction and the federal projects Table Rock Dam, Kimberling Bridge and Cave Fair Bridgewere not similar to those required on the $110,000 school house job under consideration.
It will be noted that the findings of the court supported the Commission in the designation of the "locality" involved, the adequacy of the supply of carpenters in Stone County, and the inapplicability of the wage rates paid to carpenters employed on the federal projects and highway construction. The only definite finding of the court that is adverse to the determination of the Commission is that it should have considered applicable wage rates established by the collective wage agreement (Objectors' Exhibit 17), to be regarded, however, as "no more than a factor in the making of the determination".
The Objectors maintain here in their brief that the witnesses for the Commission and the School Board were "an aggregation of part-time farmers-jack-of-all-trades laborer-block layers-plumber-electrician-roof-hammer and saw carpenters"; that the Commission refused to consider the relevant facts in evidence, as pointed out; that the determination is, therefore, unauthorized by law; that the case did not require the exercise of discretion on the part of the Commission, but merely the application of the law to the facts in evidence, and that the reviewing court had authority to weigh and to review the evidence and to make its own determination of the facts, citing Section 536.140, subd. 3. That section and paragraph permit the court in such review proceedings to weigh the evidence for itself and to determine the facts, if the action being reviewed does not involve the exercise by the agency of administrative discretion, giving deference to the opportunity of the agency to observe the witnesses, and the experience and expertness of the agency. The section, however, in paragraph 5, provides that the reviewing court "shall not substitute its discretion for discretion legally vested in the agency".
The Commission in the instant case was required by statute to determine whether the "locality" to be considered should be confined to Stone County; whether there was a sufficient supply of carpenters in that county to efficiently perform the work on the school property at the prevailing rate of wages to carpenters as claimed by the School Board and the Commission; whether the prevailing rates in evidence were generally paid to carpenters for carpenter work similar in character to services to be performed upon the school at Galena. These and other issues were matters reposed by law in the Commission for determination, clearly requiring the exercise of its discretion. Hence we rule that the reviewing court in this case has no authority to weigh the evidence and to determine for itself the facts in the case. Koplar v. State Tax Commission, Mo., 321 S.W.2d 686, 697; State ex rel. Chestnut Inn, Inc. v. Johnson, Mo.App., 297 S.W.2d 576, 577.
The function of the reviewing court in this case is to decide if the determination of the Commission was authorized by law and was supported by competent and substantial evidence upon the whole record. In so doing, it may determine whether the Commission could reasonably have made its findings and reached its results upon consideration of all the evidence before it. A decision clearly contrary to the evidence should be set aside. Art. V, Sec. 22, Const. of Mo.1945, V.A.M.S.; Wood v. Wagner *90 Electric Corp., en Banc., 355 Mo. 670, 197 S.W.2d 647; Groce v. Pyle et al., Mo.App., 315 S.W.2d 482, 485; Sections 536.100, 536.140, RSMo 1959, V.A.M.S.
The Commission's chief point of error, however, is that the court erred in remanding the case on the ground that the Commission failed to consider the collective wage bargaining agreement referred to. The record is replete with references to the collective bargaining agreement in evidence. The entire instrument was introduced in evidence and a part of it was read orally to the Commission. The chairman announced that it would be received. The president of the carpenters' district council and two others of its officials testified to the execution and scope of the agreement. It was frequently referred to in the testimony as the "union scale". Twelve witnesses testified as union carpenters who had received wage rates in the amounts which the Objectors claim were authorized by the agreement. At one point the chairman of the Commission stated that there was no doubt about the $2.65 union scale.
In its determination the Commission referred to the collective wage bargaining agreement as having been introduced in evidence; that under it overtime was paid at time and a half. The decision made note of the Objectors' exhibit and evidence showing federal, state and other projects on which the hourly rate of $2.65 to $2.77 had been paid to carpenters, and the Commission ruled, in effect, that on account of the nature and size of such projects, the prevailing hourly wage rates for carpenter work thereon, based on such bargaining agreement, would not be applicable nor the services similar to the carpenter work required for the school job at Galena.
In City of Joplin v. Industrial Commission, Mo., 329 S.W.2d 687, cited by the Objectors, the prevailing rate for workmen for services on relief sewers and mains in Joplin was sought, and the Commission received much evidence of wage rates for work on heavy construction; discouraged the introduction of evidence of rates for lighter types of work, and determined the case on the basis of the rate for heavy construction work. The Supreme Court held that the Commission should have considered the evidence showing that the work on heavier construction was not similar to the work on the sewers.
In the case at bar, however, not only did the Commission receive and admit evidence of the collective bargaining agreement and of the prevailing rates paid to carpenters thereunder for work on bridge, dam and highway, but discussed and ruled upon the contention that such services for which the collective bargaining rates were paid were not similar to the carpenter work required for the school job.
We note the statute (290.260, subd. 1) states that the Department "shall ascertain and consider the applicable wage rates established by collective bargaining agreements, if any, and such rates as are paid generally within the locality". The Commission, in its final decision in this case, ascertained that the services to which the collective bargaining agreement in evidence had been applied were dissimilar to the services required for the school project involved, and explained why, in its judgment, there were no "applicable wage rates established by collective bargaining agreements". In such case, we believe, the statute requires no more consideration of the collective bargaining agreement in evidence than was given in the above ascertainment.
But even if, in isolated cases, the services to which the rates fixed by the bargaining agreement were applied be deemed similar to the services required on the school job, the statute requires only that the Commission "consider" such agreements, if any, as to whether such rates are the prevailing rates in the locality. It does not require the Commission to follow or adopt the rates so stipulated if not found to be the prevailing rates for such services. If it may reasonably be claimed that the Commission was required by the statute to *91 give the collective bargaining agreement in evidence greater consideration than it did, we note the legal definition of "consider" in such sense:
"Consider. To fix the mind on, with a view to careful examination; to examine; to inspect. Eastman Kodak Co. v. Richards, 204 N.Y.S. 246, 248, 123 Misc. 83. To deliberate about and ponder over. People v. Tru-Sport Pub. Co., 291 N.Y.S. 449, 457, 160 Misc. 628. To entertain or give heed to. Rodolf v. Board of Com'rs of Tulsa County, 122 Okla. 120, 251 P. 740, 741". Black's Law Dictionary. See 15 C.J.S. p. 984.
For the court to take issue with the Commission under the record in this case, on its finding of dissimilarity of services and of the inapplicability of the rates fixed by the collective bargaining agreement in evidence, would be to substitute the court's judgment for that vested exclusively in the Commission by law.
From the foregoing, we conclude that the judgment of the circuit court should be reversed and the cause remanded with instructions to enter judgment affirming the determination of the Commission. The Special Commissioner so recommends.
PER CURIAM.
The foregoing opinion by DEW, Special Commissioner, is adopted as the opinion of the court.
All concur.