**ASSOCIATED GENERAL CONTRACTORS OF MISSOURI, et al., Appellants,**

**and**

**Western Missouri and Kansas Laborers District Council, et al., Appellants–Intervenors,**

**v.**

**DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, Respondent,**

**and**

**Missouri State Labor Council, et al., Respondents–Intervenors.**

**Nos. WD 49315, WD 49316.**

Missouri Court of Appeals, Western District.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Application to Transfer Denied June 20, 1995.

3. Missouri's statute of frauds.

Michael P. Riley, Kent L. Brown, Carson & Coil, Jefferson City, for Associated General Contractors.

Albert J. Yonke, Michael G. Newbold, Yonke, Arnold, Newbold & Regan, Kansas City, for Western Mo. and Kan. Laborers.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cynthia A. Quetsch, Asst. Atty. Gen., Jefferson City, for Dept. of Labor and Ind. Relat. Comm.

Ronald C. Gladney, Bartley, Goffstein, Bollato & Lange, Clayton, for Mo. State Labor Council.

Before LOWENSTEIN, P.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

This case involves a challenge to the validity of 8 CSR 30–3.060, an administrative rule promulgated on October 19, 1992 by the Missouri Department of Labor and Industrial Relations ("Department"). Following its publication in the *Missouri Register*, the Department received some 59 sets of written comments concerning the proposed rule, some in favor and some in opposition. In the January 19, 1993 issue of the *Missouri Register*, the Department published an order of rulemaking summarizing and responding to those comments. Some of the suggested rule changes were made, and some, including those suggested by appellants (Associated General Contractors of Missouri, Inc. and others, hereinafter referred to collectively as "AGC"), were not. On March 23, 1993, AGC brought suit against the Department, seeking to prevent 8 CSR 30–3.060 from going into effect. On May 4, 1993, the day before the rule was scheduled to become effective, the Circuit Court of Cole County entered a temporary restraining order barring its enforcement or application pending a full hearing. Various labor organizations subsequently intervened on both sides, and a bench trial was held on October 28, 1993. AGC now appeals the trial court's final order of March 15, 1994 dissolving the temporary restraining order and denying its requests for declaratory and permanent injunctive relief. We affirm the judgment of the trial court.

The rule at issue in this case is far too long to quote in its entirety. Briefly stated, 8 CSR 30–3.060 contains a little more than two dozen "occupational titles of work" describing the various types of work done by workers performing public works projects in Missouri. It also sets forth procedures for adding, deleting or modifying those occupational

titles on a local (i.e., county-by-county) basis, submitting wage information to be used by the Department in determining the prevailing wage rate for each occupational title, and objecting to a wage determination. The rest of the rule lists the occupational titles and provides a detailed definition for each one. The titles and definitions were derived from data drawn from Missouri collective bargaining agreements, the United States Department of Labor's *Dictionary of Occupational Titles,* and the opinions of union and non-union experts in the Missouri construction industry. The Department's purpose in promulgating 8 CSR 30–3.060 was to formally define the occupational titles which have been used since 1957 (the year Missouri's Prevailing Wage Act, §§ 290.210–290.340, RSMo 1986,[1] was enacted by the General Assembly) in a consistent and uniform manner so the Department and the contractors bidding on and performing public works projects would both be able to identify with reasonable certainty "work of a similar character" relative to the applicable prevailing hourly wage rate required to be paid by contractors under the Act. *See* § 290.210(5) (which defines the prevailing hourly wage rate as the wage "paid generally, in the locality in which the public works [project] is being performed, to workmen engaged in work of a similar character"); § 290.230.1 (which provides that all workers employed by private contractors or subcontractors in the construction of public works must be paid not less than the prevailing wage).

As 8 CSR 30–3.060 is a rule promulgated by a state administrative agency, AGC's suit for declaratory judgment was an appropriate means to obtain a judicial determination of its validity. Rule 87.02(c); § 536.050.1; *Bresler v. Tietjen,* 424 S.W.2d 65, 70 (Mo. banc 1968). In an action for declaratory judgment tried before a court without a jury, the judgment entered by the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or the court erroneously declared or applied the law. *Press–Journal Publishing Co. v. St. Peters Courier–Post,* 607 S.W.2d 453, 455 (Mo.App.1980). We must also keep in mind the well-established principles that administrative rules and regulations issued under authority of an act should not be judicially invalidated except for weighty reasons and are to be sustained unless unreasonable and plainly inconsistent with the act. *Foremost–McKesson, Inc. v. Davis,* 488 S.W.2d 193, 197 (Mo. banc 1972). The burden is upon those challenging such rules to show that they bear no reasonable relationship to the legislative objective. *Id.* Furthermore, the validity of an administrative rule is to be tested in light of the evil sought to be cured and a rule is not to be considered unreasonable merely because it might be burdensome. *Id.* at 197–98.

AGC briefed six points in this appeal. In its first and third points, AGC asserts the rule is unreasonable and inconsistent with the Prevailing Wage Act. It directs us to the testimony of several witnesses who said that the occupational titles contained therein do not reflect certain prevailing local work practices. For example, AGC notes that one witness testified to the effect that in a few Missouri counties, general construction workers often perform sheet metal work falling within the definition of the occupational title of "ironworker." AGC then reasons that if this practice were sufficiently widespread in those counties, the prevailing wage for ironworkers performing other types of work traditionally associated with that craft would then be determined based on what the general construction workers were paid for doing sheet metal work, in conflict with the Prevailing Wage Act. That being so, the argument continues, the rule is invalid because an administrative regulation inconsistent or in direct conflict with a statute is a nullity. *See Brooks v. Pool–Leffler,* 636 S.W.2d 113, 118 (Mo.App.1982).

However, 8 CSR 30–3.060 is not inconsistent with the letter or spirit of the Act. Assuming, *arguendo,* that AGC's hypothetical situation might arise at some point, which we seriously doubt, the rule contains several ways to resolve the problem. 8 CSR 30–3.060(3) sets forth a mechanism for interest-

1. Unless otherwise indicated, all statutory references are to RSMo 1986.

ed parties to add, delete or modify the definition of an occupational title on a county-by-county basis. In addition, 8 CSR 30–3.060(4) permits any interested party to submit additional wage information to be used by the Department in establishing the prevailing wage rate for a particular occupational title. Moreover, 8 CSR 30–3.060(6) allows any interested party to object to a prevailing wage determination on the grounds that an occupational title does not reflect the work done within a locality. Any aggrieved ironworker could take advantage of one or more of these procedures to obtain the prevailing wage to which he or she was entitled for performing non-sheet metal-related tasks.

AGC also contends the rule conflicts with the Prevailing Wage Act because 8 CSR 30–3.060(6) provides that the occupational title of work descriptions "are presumptively valid throughout the entire state of Missouri." They claim this provision is contrary to the overall intent behind the Act and its consistent focus on local work practices. However, there is no conflict. Under the Act, workers are paid based upon the type of work they do. The prevailing wage rate is established based upon the wage paid in the past to workers who performed the same type of work in the same locality. The type of work reflected in each occupational title is the same no matter where it is performed or how large or small the public works project is. What may differ from county to county is who does the work and the wage rate paid for that work. 8 CSR 30–3.060 does not change this procedure in any way. It simply standardizes the descriptions of the types of work typically performed on Missouri public works projects so the Department can more easily determine whether the appropriate prevailing wage is being paid on a given project. Whoever performs a task falling within the definition of a given occupational title will still be paid the county-wide prevailing wage for that work. Furthermore, even if there was a conflict, the various remedial procedures described *supra* are available.

Finally, we note that § 290.240.1 clearly places the duty of enforcing the provisions of Missouri's Prevailing Wage Act on the Department. It requires the Department to "inquire diligently as to any violation[s]" of the Act and states that the Department "shall enforce generally" its provisions. In promulgating 8 CSR 30–3.060, the Department expressly relied on § 290.240.2, which authorizes the Department to "establish rules and regulations for the purpose of carrying out the provisions" of Missouri's Prevailing Wage Act. The trial court found that 8 CSR 30–3.060 is reasonably related to achieving this valid legislative objective because it allows the Department to improve its enforcement of the Act by reducing or totally eliminating disputes about how work is classified. The record contains substantial evidence supporting that finding, and we will not disturb it on appeal. Because the rule is neither unreasonable nor plainly inconsistent with Missouri's Prevailing Wage Act, AGC's first and third points are denied.

In its second point, AGC argues the rule is invalid because the occupational titles give the statutory phrase "work of a similar character" a meaning which is inconsistent with its adjudicated meaning. We disagree. The first Missouri case relied on by AGC, *City of Kennett v. Labor & Indus. Relations Comm'n,* 610 S.W.2d 623 (Mo. banc 1981), was an appeal from a Labor and Industrial Relations Commission ("Commission") decision upholding the Department's preliminary prevailing wage determinations concerning proposed municipal street, water and sewer improvements. The Court in *City of Kennett* simply observed that the Commission properly considered the Department's evidence regarding wages paid for local highway, road and bridge construction projects since the work performed on those projects "could reasonably be found to be similar" to the work to be done on the proposed municipal projects. 610 S.W.2d at 626. *City of Kennett* clearly does *not* hold, as claimed by AGC, that the phrase "work of a similar character" as used in Missouri's Prevailing Wage Act refers only to the nature or type of public works project being performed or that the type of project is somehow more important than the character of the work actually being done on the project. In *City of Joplin v. Industrial Comm'n,* 329 S.W.2d 687 (Mo. banc 1959), the next Missouri case cited by

AGC, the Court held the Commission erred in making a final prevailing wage determination on a proposed municipal sewer improvement project without even considering the evidence presented by the objecting parties showing that the craft classifications and wage rates in sewer construction were different from those in heavy construction, the latter of which formed the exclusive basis for the Commission's wage determination. *See id.* at 694, 695. The Court also held that on remand, the Commission was to consider "any work in heavy construction that could reasonably be found to be similar" to the work to be performed on the proposed sewer project. *Id.* at 695. *City of Joplin* therefore not only does not support AGC's argument, but actually contradicts it. Finally, AGC claims *United Bhd. of Carpenters & Joiners v. Industrial Comm'n,* 363 S.W.2d 82 (Mo. App.1962), holds that the statutory term "work of a similar character" relates to the size and scope of a public works project, not necessarily the types of work performed thereon. Again, we disagree. *United Bhd. of Carpenters & Joiners* involved the validity of the Commission's final prevailing wage determination for carpentry work on a relatively modest school building project in Stone County. Because several large-scale federal public works projects involving union carpenters had recently been completed in Stone County, including bridge and dam construction projects, the objecting union submitted its collective bargaining agreement as evidence of what the prevailing hourly wage for carpenters working on the school building project ought to be. The Commission, which declined to adopt those wage rates as the prevailing wage, made two findings. First, the Commission determined that "on account of the nature and size" of the federal construction projects, the wage rates paid for the carpentry work performed on those projects and reflected in the collective bargaining agreement were not "applicable wage rates" as required by § 290.260.1, RSMo 1959.[2] 363 S.W.2d at 90. Second, the Commission found that the work activities the carpenters performed on the bridge and dam projects were not "similar" to the types of carpentry work required on the school building project. *Id.* at 85–86, 90. This court upheld both findings, as well as the Commission's final prevailing wage determination. *Id.* at 91. So, while *United Bhd. of Carpenters & Joiners* stands for the proposition that the size, scope and monetary value of a proposed public works project may have some bearing on whether the wage rates established by a prior collective bargaining agreement must be considered in determining the prevailing wage rate, the case does not hold, as AGC claims, that size and monetary value are determinative or that task-based occupational titles are impermissible. Point denied.[3]

Citing our recent decision in *Missouri Hosp. Ass'n v. Air Conservation Comm'n,* 874 S.W.2d 380 (Mo.App.1994), AGC contends in its fourth point that the trial court erred in not declaring 8 CSR 30–3.060 void due to the Department's failure to comply with the fiscal note provisions of §§ 536.200 and 536.205, RSMo 1994. However, we address neither the alleged shortcomings outlined by AGC in its brief nor the correctness of the trial court's decision thereon because a temporary legislative moratorium on such challenges is currently in effect. Section 536.200.5, RSMo 1994, states:

> In the event that any rule published prior to June 3, 1994, shall have failed to provide a fiscal note as required by this section, such agency shall publish the required fiscal note cross-referenced to the applicable rule prior to August 28, 1995, and in that event the rule shall not be void. Any such rule shall be deemed to have met the requirements of this section until that date.

Although it does not require the conforming fiscal note to be cross-referenced to the applicable rule, § 536.205.4, RSMo 1994, con-

2. Section 290.260.1, RSMo 1986 contains the same language. *See also* § 290.262.1, RSMo 1994, which was enacted by the General Assembly in 1993 and contains an identical clause.

3. AGC also cites a number of non-Missouri cases in support of this point. We decline to discuss or consider them since they are not binding on this court and all involve foreign, non-identical prevailing wage statutes.

tains a similar provision.[4] Since 8 CSR 30–3.060 was published prior to June 3, 1994, it is "deemed to have met the requirements of" §§ 536.200 and 536.205 until August 28, 1995. Accordingly, AGC's present challenge to the validity of the rule on fiscal note grounds cannot be sustained.[5] Point denied.

In its fifth point, AGC argues the trial court erred in finding that 8 CSR 30–3.060 does not violate Mo. Const. art. X, § 21 (part of the Hancock Amendment, which includes §§ 16–24). We disagree.

Although the parties do not raise the issue, we must first determine whether we have jurisdiction to address this claim. Mo. Const. art. V, § 3 provides that the Missouri Supreme Court has exclusive original appellate jurisdiction in all cases involving the construction of Missouri's revenue laws. However, the Court of Appeals may decide legal issues concerning those laws if the issues raised in the appeal "can be disposed of by the application of a prior [S]upreme [C]ourt construction." *Equitable Life Assurance Soc'y v. State Tax Comm'n,* 852 S.W.2d 376, 383 (Mo.App.1993). This principle has been applied in appeals involving the provisions of the Hancock Amendment. *See Browning–Ferris Indus. v. Dance,* 671 S.W.2d 801, 806 (Mo.App.1984). In the instant case, AGC's claim that 8 CSR 30–3.060 violates the Hancock Amendment can be resolved by applying existing Missouri Supreme Court precedent. We therefore have jurisdiction to consider it.

The pertinent portion of art. X, § 21 provides:

> A new activity or service or an increase in the level of any activity or service *beyond that required by existing law* shall not be required by the [G]eneral [A]ssembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

(Emphasis added). Whether by virtue of a statute or a duly promulgated state administrative agency rule, a violation of this portion of art. X, § 21 exists if both (1) a new or increased activity or service is required of a political subdivision by the State and (2) the political subdivision experiences increased costs in performing that activity or service. *State ex rel. City of Springfield v. Public Serv. Comm'n,* 812 S.W.2d 827, 830 (Mo.App. 1991) (*citing Miller v. Director of Revenue,* 719 S.W.2d 787, 788–89 (Mo. banc 1986)). The trial court's findings on the Hancock Amendment claim, all of which are supported by substantial evidence in the record, clearly demonstrate that it found AGC's proof of both elements lacking.

The trial court found that 8 CSR 30–3.060 does not require any government entity or contractor to perform any activity or render any service that is not already mandated by the existing Prevailing Wage Act. It further noted that since contractors are currently obligated by §§ 290.230 and 290.250 to pay the prevailing wage rate for each type of work performed by each employee during the course of each work day, any contractor who maintains that the rule requires new public expenditures to pay for the expense of hiring additional timekeepers or recordkeepers is in effect admitting that it is not in compliance with the Act. The trial court therefore concluded that because 8 CSR 30–3.060 merely serves to clarify the existing prevailing wage statute without creating any additional cost to any political subdivision or contractor presently in compliance with the Prevailing Wage Act, it did not violate art. X, § 21.

The only cases cited by AGC in support of its argument to the contrary are completely inapposite. In *Missouri Mun. League v. Brunner,* 740 S.W.2d 957 (Mo. banc 1987), the Court simply held that a petition which alleged that a new state statute mandated an increase in the level of activity or service required of local governments to develop,

4. At the same time, the General Assembly also imposed a five year statute of limitations on any challenge to a rule based on the promulgating agency's failure to meet the requirements of §§ 536.200 or 536.205, RSMo 1994. *See* §§ 536.200.4, 536.205.3, RSMo 1994. The clock begins to run on the rule's effective date. *Id.*

5. We express no opinion as to the merits of AGC's fiscal note claims.

operate and close solid waste landfills without providing an appropriation of state funds for the increased costs should not have been dismissed by the trial court since it stated a claim for relief under art. X, § 21. On the other hand, *Boone County Court v. State,* 631 S.W.2d 321 (Mo. banc 1982), concerned a statute which directly mandated a $100 increase in the annual salary for collectors of second class counties without providing such counties the means with which to pay the required salary increases.[6] Unlike that situation, here the trial court made express findings, supported by substantial evidence in the record, that the rule does not require any political subdivision or contractor already complying with the Prevailing Wage Act to incur additional expenses. Finally, *Beatty v. Metropolitan St. Louis Sewer Dist.,* 867 S.W.2d 217 (Mo. banc 1993), has no application here as it is a case concerning art. X, § 22(a), a completely different aspect of the Hancock Amendment.

AGC also complains that the rule shifts the substantial financial burden of determining the prevailing wage rate from the Department to the local government entity contracting for the work without an accompanying state appropriation to cover those costs. However, the rule does no such thing. It does not relieve the Department of its continuing statutory obligation under § 290.260.1 to determine the prevailing wage rate for each locality. Nor does it change the manner in which the Department determines those wage rates. It simply defines the occupational titles which have been used for decades so that all contractors performing public works projects treat work of a similar character in the same manner with respect to the wage levels to be paid under the Act. While 8 CSR 30-3.060(6) does provide that those definitions "are presumptively valid throughout the entire state of Missouri," the rule also provides mechanisms for interested parties to modify the definition of an occupational title and to submit additional wage information to be used by the Department in establishing the prevailing wage rate for a particular occupational title. *See* 8 CSR 30-3.060(3), (4). Requiring an interested party to overcome the presumption that a given definition is correct by presenting proper evidence to the contrary does not empower or obligate that party to determine the corresponding prevailing wage rate as well. Whether or not a definition is eventually modified, the Department still has the ultimate responsibility to determine the prevailing wage rate by compiling the hours worked and wages paid for the items within the definition. In other words, while the definition and the wage rate may be indirectly connected, successfully changing the definition does not require the party requesting the change to also determine the wage rate, and AGC did not prove otherwise. This point is also denied.

In its sixth and final point, AGC contends the trial court erred in holding that 8 CSR 30-3.030 is not preempted by federal law since it does not define, expand or restrict union craft jurisdiction. It claims the rule is nothing more than an unauthorized attempt by the Department to intrude into the collective bargaining process and regulate union jurisdictional disputes governed by federal labor law. We disagree.

As observed by the trial court in its findings, the rule is designed to assist the Department in determining which wage rates apply to the work being performed by a worker on a public works project so it can ascertain whether the prevailing wage has been paid. It does not dictate who may or must perform the work on such projects and in no way affects a union's power, authority or jurisdiction to determine who is qualified or able to perform such work. It simply provides that when work meeting the definition set forth for a given occupational title is performed, the corresponding prevailing wage rate must be paid to whoever did that work, no matter what the worker's "official" job title or union affiliation. These findings

6. We should note that on August 5, 1986, the citizens of Missouri adopted a constitutional amendment effectively reversing the Court's decision in *Boone County. See* Mo. Const. art. VI, § 11, subsection 1, which provides that a statute authorizing an increase in the compensation of county officers "shall not be construed as requiring a new activity or service or an increase in the level of any activity or service within the meaning of this constitution."

are all supported by the record. Moreover, according to 8 CSR 30–3.060(1):

> Each occupational title defines by name the type of work performed in the construction of a public works project. *The description of work designated for a particular occupational title is not intended to be jurisdictional in scope or nature,* and is not to be construed as limiting or prohibiting workers from engaging in construction work falling within several occupational titles.

(Emphasis added.) Finally, the rule contains no restrictions on which union can submit additional wage information for a particular occupational title.

It is quite clear that nothing in 8 CSR 30–3.060 dictates who may or may not perform certain work, restricts the unions' power to determine who actually does the work, or attempts to "regulate" or "invade" the collective bargaining process, as claimed by AGC. Rather, it simply remedies longstanding deficiencies in §§ 290.220 and 290.230 by defining occupational titles covering "work of a similar character" so the Department can more easily determine the prevailing wage a craftsman must be paid when he performs certain types of work, *regardless* of the worker's identity or union affiliation. The occupational titles are not binding or mandatory "job descriptions," and the rule applies both to union and non-union contractors. None of the various cases cited by AGC, including *Essex Contracting, Inc. v. City of DeSoto,* 775 S.W.2d 208 (Mo.App.1989) and *Essex Contracting, Inc. v. City of DeSoto,* 815 S.W.2d 135 (Mo.App.1991), compel the conclusion that any recognized federal preemption doctrine applies to this case in any way.

The judgment of the trial court is affirmed.

All concur.