**The MISSOURI MUNICIPAL LEAGUE, et al., Appellants,**

v.

**The STATE of Missouri and the Missouri Safe Drinking Water Commission, Respondents.**

No. 78567.

Supreme Court of Missouri, En Banc.

Oct. 22, 1996.

**19.** Section 1.140, RSMo 1994.

Patrick Cronan, Columbia, for Appellants.

Jeremiah W. (Jay) Nixon, Attorney General, Joseph P. Bindbeutel, Robert C, Cook, Assistant Attorney's General, Jefferson City, for Respondents.

COVINGTON, Judge.

The Missouri Municipal League filed suit against the State of Missouri and the Missouri Safe Drinking Water Commission claiming that section 640.100.4, RSMo Supp. 1992 [1], violated the Hancock Amendment. The Hancock Amendment prohibits the state from reducing the state financed proportion of any required activities or services. Mo. Const., art. X, section 21. Section 640.100.4, RSMo Supp.1992, requires public water suppliers to pay fees for laboratory services and program administration. At issue is whether water testing is a required activity of a political subdivision. The trial court granted summary judgment in favor of the State. The Missouri Municipal League appealed. The judgment of the trial court is reversed.

The facts are not in dispute. The State of Missouri has monitored public drinking water since 1919. Section 5790, RSMo 1919. The general assembly authorized the state board of health to enact and enforce regulations to ensure safe drinking water. Until 1978, Missouri law required water suppliers to pay testing costs. In 1978, the general assembly enacted Senate Bill 509, the "Missouri Safe Drinking Water Act" ("the Act"). Sections 640.100 to 640.140, RSMo 1978. Effective on August 1, 1978, the Act gave the state the authority to enforce state laws for public drinking water. Section 640.100 required the state to enact rules and regulations for testing of public drinking water. Section 640.100.4 provided that the division of health "shall" provide testing free of charge. Section 640.100.4, RSMo 1978.

On November 4, 1980, the people of Missouri amended the Missouri Constitution with the passage of the Hancock Amendment. The Hancock Amendment is codified in article X, sections 16 through 24 of the Missouri Constitution. Section 21 makes it unconstitutional for the state to reduce "the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions" as of the effective date of the amendment. Mo. Const., art. X, section 21.

---

1. Section 640.100.4, RSMo Supp.1992, is currently codified in section 640.100.3, RSMo Supp. 1995.

In 1982, the general assembly amended section 640.100.4 to require the Department of Natural Resources to collect fees to cover the reasonable costs of laboratory services and program administration (LSPA fees). The water supplier is required to pay LSPA fees even if the water supplier is not using the state's services. Section 640.100.4 allows each public water supplier either to send its samples to the state for testing or to obtain an analysis from a certified laboratory. At the time this suit was filed, section 640.100.4 was codified at section 640.100.4, RSMo Supp.1992.

In 1989, in response to the Federal Safe Drinking Water Act, the general assembly amended the Act to include a requirement for annual testing of all contaminants addressed in the federal law. The testing requirement is currently codified in section 640.100.3, RSMo Supp.1995.

In 1994, the Safe Drinking Water Commission promulgated LSPA fee regulations. 10 CSR 60–16.030. Since promulgation of 10 CSR 60–16.030, the state funds approximately eighty-eight percent of the costs of water testing and program administration and the political subdivisions twelve percent. On the date the Hancock Amendment became effective, the state provided water testing without charge to all public water suppliers.

Missouri Municipal League contends that section 640.100.4, RSMo Supp.1992, and 10 CSR 60–16.030 violate Missouri Constitution, article X, section 21, which provides in pertinent part, "The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions." This Court agrees.

Water testing was an existing activity at the time the Hancock Amendment was enacted. Section 640.100.4, RSMo 1978. The state has reduced the state financed proportion of the costs of water testing. In 1980, section 640.100.4 required the state to provide water testing free of charge. Section 640.100.4, RSMo 1978. In 1982, the general assembly amended section 640.100.4 to require water suppliers to pay the costs of testing. Requiring water suppliers to pay the cost of testing, therefore, constitutes a reduction in the state financed proportion of the costs of water testing.

■ The issue is whether water testing is required of a political subdivision. Section 640.100.4 provides that the department "shall" conduct water testing. In *Farmers & Merchants Bank and Trust Co. v. Director of Revenue*, this Court stated that whether "shall" is mandatory or discretionary is a function of context. 896 S.W.2d 30, 32 (Mo. banc 1995). "Shall" is mandatory if the legislature "includes a sanction for failure to do that which 'shall' be done." *Id.* at 33. In the present case, water testing is clearly required because the state has mandated that testing "shall" be done to comply with both state and federal regulations. Section 640.120, RSMo 1994. The Department "shall" collect fees for laboratory testing and program administration. Section 640.100.4, RSMo Supp.1992. If a municipality does not have its water tested, it is subject to fines or loss of its operating permit. Sections 640.125, 640.130, RSMo 1994; 10 CSR 60–16.030. Water testing is a required activity.

The State nevertheless contends that because providing water is a discretionary activity, water testing is not "required" of a political subdivision. The State relies on *State ex, rel. City of Springfield v. Missouri Pub. Serv. Comm'n* for the proposition that where a city is performing a discretionary function, any law that results in an increase in cost to the city relating to that function is not in violation of Hancock. 812 S.W.2d 827 (Mo.App.1991). In *City of Springfield*, the City argued that new gas safety rules imposed by the Missouri Public Service Commission violated section 21 by requiring a new or increased activity of the City. The Missouri Court of Appeals, Western District, held that providing gas was a discretionary function of municipalities; therefore, the new rules did not violate section 21.

This Court disagrees with the rationale of the court of appeals in *City of Springfield*, finding the rationale of *Loving v. City of St. Joseph* more persuasive. 753 S.W.2d 49 (Mo.App.1988). In *Loving,* the court of appeals stated that the "distinction between governmental and proprietary functions has

little, if any, application outside of the tort liability of municipalities." *Id.* at 51. The court of appeals went on to point out that article X, section 22, does not distinguish between governmental and proprietary activities. Section 22 prohibits the levying of "any tax, license or fees." Similarly, in the present case, section 21 addresses "any existing activity or service" making no distinction between governmental and proprietary activities. Upholding the governmental/proprietary distinction allows the state to characterize many activities of municipalities as "proprietary," thus, not "required of a political subdivision." The distinction allows the government to thwart the purpose of the Hancock Amendment. Once the state imposes a requirement on a political subdivision, it makes no difference whether the underlying service is one traditionally performed by the government. Governmental/proprietary distinctions are abolished in article X, section 21, cases. *City of Springfield* is overruled.

The State further argues that the water testing is not required of a political subdivision by analogizing to *City of Jefferson v. Missouri Dep't of Natural Resources,* 863 S.W.2d 844 (Mo. banc 1993). *City of Jefferson* is not on point. In *City of Jefferson,* several municipalities submitted that Senate Bill 530 required them to join solid waste management districts in violation of section 21. This Court held that there was no express statutory language requiring a municipality to join a solid waste management district. *Id.* at 847. In *City of Jefferson,* it was unnecessary for this Court to reach the issue presented here.

■ As a final attempt to support the trial court's grant of summary judgment, the State asserts that federal law "preempts" the field of public drinking water. As best can be discerned, the State's argument is that because section 640.100.4 serves to enforce the requirements of the Federal Safe Drinking Water Act, section 640.100.4 is not subject to the Hancock Amendment. Certainly the federal government has preempted the area of standards for safe drinking water. *Mattoon v. City of Pittsfield,* 980 F.2d 1, 4 (1st Cir.1992). The State, however, confuses standards with the enforcement of standards, which is specifically left to the states. 42 U.S.C.A. § 300g–3(e). Enactments of the general assembly, including section 640.100.4, must conform to the requirements of the Missouri Constitution.

In sum, section 640.100.4 reduces the state financed proportion of the costs of water testing, an existing activity required of counties and other political subdivisions. Section 640.100.4, and consequently, 10 CSR 60–16.030, violate article X, section 21 of the Missouri Constitution, as applied to counties and political subdivisions of the state. The judgment is reversed.

All concur.