# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2279

_____

State of Missouri; Missouri     \*
Department of Natural Resources, the     \*
Missouri Clean Water Commission,     \*
    \*
       Plaintiffs - Appellants,     \*
    \*   Appeal from the United States
    v.     \*   District Court for the
    \*   Western District of Missouri.
City of Glasgow, a Missouri     \*
Corporation,     \*
    \*
       Defendant - Appellee.     \*
    \*

_____

Submitted: January 12, 1998
Filed: August 10, 1998

_____

Before RICHARD S. ARNOLD,[1] Chief Judge, and WOLLMAN and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

The State of Missouri (the state) appeals the district court's order granting summary judgment to the City of Glasgow, Missouri (Glasgow), claiming that the court

_____

[1] The Honorable Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Honorable Pasco M. Bowman II.

erred in failing to grant declaratory and injunctive relief against Glasgow for violations of the Federal Clean Water Act and in ruling that a state statute requiring Glasgow to pay permit fees to operate its water treatment facility violates the Missouri Constitution. The state also claims that the district court improperly ordered it to issue Glasgow a permit for its water treatment facility. We reverse and remand.

## I. Factual and Procedural Background

Glasgow operates a water treatment facility that provides drinking water to its residents. Glasgow pumps water from the Missouri River into the facility, treats the water to make it suitable for drinking, and then pumps some water back into the river. As part of this treatment process, the facility also discharges the precipitated solids formed during the treatment process, referred to as sludge, back into the Missouri River.

Glasgow's water treatment facility is regulated by state and federal water pollution laws. The facility is considered a "point source" under the Federal Clean Water Act and Missouri state clean water laws because it discharges sludge into the Missouri River. See 33 U.S.C. § 1362(6),(14) (1994); Mo. Ann. Stat. § 644.016(8), (9) (West 1998). Under both sovereigns' laws, a point source (like Glasgow's facility) is required to have an operating permit in order to lawfully discharge sludge into a river. 33 U.S.C. §§ 1311(a), 1342; Mo. Ann. Stat. § 644.051.2. In Missouri, a point source must apply to the Missouri Clean Water Commission for the necessary operating permit because the state has chosen to administer its own permit program, an option authorized by federal law. See Mo. Ann. Stat. § 644.026.1(13); 33 U.S.C. § 1342(b). Pursuant to § 1342(b), the administrator of the federal Environmental Protection Agency approved Missouri's submitted plan, and hence the issuance of a Missouri state permit constitutes compliance with the federal statute's national pollutant discharge elimination system. Glasgow had such a permit to discharge sludge into the Missouri River until 1995, when its permit expired. Glasgow then applied for

a new permit from the state, but refused to pay the enhanced $1,500 annual permit fee required by an amended state statute. See Mo. Ann. Stat. § 644.052.2(5). Because Glasgow would not pay the fee, the state refused to issue a permit for Glasgow's water treatment facility.

After sending Glasgow notices of its failure to pay the fee and to obtain a permit, the state filed a complaint in federal district court against Glasgow, alleging: (1) that Glasgow is violating federal law by discharging sludge from its water treatment facility into the Missouri River without a permit; and (2) that Glasgow had failed to pay permit fees required by state law. The state sought injunctive and declaratory relief on its claim that Glasgow is violating federal law and sought money damages for Glasgow's failure to pay permit fees. In its answer, Glasgow admitted the factual allegations in the complaint regarding its discharge of sludge into the Missouri River and its operation of the water treatment facility without a permit, but asserted that it did not have to pay the permit fees because the state statute requiring the fees violated the Hancock Amendment to the Missouri Constitution. See Mo. Const. art. 10, § 21. Glasgow also asserted a counterclaim, requesting the district court to order the State to issue it a permit.

The parties then filed cross-motions for summary judgment. The district court granted the state's motion, ruling that the Hancock Amendment did not prevent the state from charging Glasgow a fee to obtain the permit necessary to operate its water treatment facility. See Missouri v. City of Glasgow, 932 F. Supp. 243, 245 (W.D. Mo. 1996), vacated on reconsideration, 966 F. Supp. 905 (W.D. Mo. 1997). Glasgow then filed a motion for reconsideration, arguing that an intervening Supreme Court of Missouri decision, Missouri Municipal League v. State of Missouri, 932 S.W.2d 400 (Mo. 1996), required the district court to reverse its ruling regarding Glasgow's Hancock Amendment defense to the state's collection of permit fees. The district court granted the motion, vacated its prior ruling, granted Glasgow summary judgment, and ordered the state to issue Glasgow a permit for its water treatment facility. See

-3-

<u>Missouri v. City of Glasgow</u>, 966 F. Supp. 905, 907 (W.D. Mo. 1997). The state appeals, claiming that Glasgow is operating its water treatment facility in violation of federal law and that the Hancock Amendment does not prevent the state from requiring Glasgow to pay the permit fees. The state also argues that even if the Hancock Amendment prevents it from requiring Glasgow to pay the permit fees, the district court improperly ordered it to issue Glasgow a permit.

## II. Analysis

"We review the district court's grant of summary judgment de novo. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." <u>Bremen Bank & Trust Co. v. United States</u>, 131 F.3d 1259, 1264 (8th Cir. 1997) (citations omitted). Because the parties agree that the material facts are not in dispute, our review is limited to the question of whether the district court correctly applied the law to these facts.

## A. The Federal Law Claim

The state first argues that the district court erred in failing to grant declaratory and injunctive relief on its claim that Glasgow is violating federal law. The state contends that Glasgow is violating the Federal Clean Water Act by discharging sludge from its water treatment facility into the Missouri River without an operating permit. We agree.

The state brought this claim as a "citizen" under the "citizen suit" provision of the Federal Clean Water Act. See J. A. at 6; 33 U.S.C. § 1365(a).[2] The state requested

---

[2]Any "person or persons having an interest which is or may be adversely affected" may sue as a "citizen" under the Federal Clean Water Act. 33 U.S.C. § 1365(g). The definition of the term "person" in the statute includes a state. <u>Id.</u> § 1362(5). Thus, the state can sue Glasgow as a "citizen" under the "citizen suit"

injunctive and declaratory relief for Glasgow's alleged violation of federal law. The State sought relief for this federal law violation separate from its claim for damages against Glasgow for failure to pay permit fees allegedly required by state law.

It is a violation of the Federal Clean Water Act to discharge a pollutant into a navigable water without a permit. See 33 U.S.C. §§ 1311(a); 1342. Glasgow admits that it is discharging sludge from its water treatment facility into the Missouri River and that it does not have a permit to do so. This sludge is considered a "pollutant" under federal law. See id. § 1362(6). The water treatment facility is a "point source" under the statute. See id. § 1362(14). Under the statute, the Missouri River is a "navigable water." See id. § 1362(7). Thus, by discharging sludge from its water treatment facility into the Missouri River without a permit, Glasgow is clearly violating federal law.

Glasgow's only defense to this violation is that the Hancock Amendment to the Missouri Constitution prevents the state from charging it the enhanced fee contained in the amended state statute to obtain a permit for its water treatment facility. But this state constitutional law defense works (if at all) only to prevent the state from charging an increased fee to obtain a permit in order to comply with the state's own water pollution law. The Supremacy Clause of the federal Constitution dictates that a state law (whether a statutory or constitutional provision) cannot prevent the administration and execution of a federal statute. See Sola Elec. Co. v. Jefferson Co., 317 U.S. 173, 176 (1942) ("It is familiar doctrine that the prohibition of a federal statute may not be set at naught, or its benefits denied, by state statutes or state common law rules."); Quinones v. City of Evanston, 58 F.3d 275, 277 (7th Cir. 1995) (city's adherence to state law that conflicts with federal civil rights law provides no defense to liability under the federal law). In our view, the state constitutional provision cannot excuse

---

provision of the Federal Clean Water Act.

Glasgow's operation of its water treatment facility without a permit in violation of federal law. Given Glasgow's admissions, we reverse the district court's judgment on Count I, and we remand for the issuance of an immediate order declaring Glasgow to be in violation of the federal statute and enjoining Glasgow from discharging any sludge from its water treatment facility into the Missouri River until such time as a permit has been issued allowing it to do so. Our remand instructions do not prevent the district court from granting such other and further relief to the state as that court deems merited and proven under the claims asserted in Count I of the complaint upon remand.

## B. The Collection of Permit Fees

In Count II of its complaint, the state sought to collect the enhanced annual permit fee which Glasgow had not paid together with its attorney's fees and costs, all pursuant to the Missouri clean water statute. The district court ruled that the Hancock Amendment prevented the state from requiring the city to pay an enhanced fee to obtain a permit, and the state appeals. The resolution of this issue requires the interpretation of Missouri law. We review the district court's interpretation of state law de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991). We are bound by the decisions of the Supreme Court of Missouri in interpreting Missouri law. B.B. v. Continental Ins. Co., 8 F.3d 1288, 1291 (8th Cir. 1993). Because the Supreme Court of Missouri has not yet addressed this precise issue, we must determine what that court would probably hold if it were called upon to decide the issue. Id. "In making this determination, a federal court may consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue." Id. (internal quotation omitted).

Missouri state law, like the Federal Clean Water Act, provides that it is unlawful to "operate, use or maintain" a water pollution "point source," such as Glasgow's water treatment facility, unless the point source obtains a permit issued by the Missouri

-6-

Clean Water Commission.  See Mo. Ann. Stat. § 644.051.2.  In order to obtain a permit, Missouri law requires a point source to pay a fee to the state.  See id. § 644.052.  State law provides that a city-owned water treatment facility with operating volume in the range of Glasgow's facility shall pay an annual fee of $1,500.  See id. § 644.052.2(5).

The annual permit fee requirements for municipal water treatment facilities contained in section 644.052.2 became law in 1990.  See 1990 Mo. Legis. Serv., Act of July 9, 1990, S.B. 582 (West).  Until 1990, Missouri law required cities to pay a "filing fee" of $75 each time they applied for a five-year permit.  See Mo. Stat. Ann. § 644.051.9 (West 1989).  This filing fee of $75 existed prior to the passage of the Hancock Amendment to the Missouri Constitution.  See Mo. Stat. Ann. § 204.051 (West 1973).  The filing fee was repealed in 1990 when section 644.052.2 was enacted.  See 1990 Mo. Legis. Serv., Act of July 9, 1990, S.B. 582, § A.  Thus, the 1990 change in state law substantially increased the cost to Glasgow for obtaining a permit for its water treatment facility—from $75 every five years to $1,500 each year.

The Hancock Amendment to the Missouri Constitution was passed by the voters of Missouri on November 4, 1980.  See Missouri Mun. League, 932 S.W.2d at 401. The provisions of this amendment are set out in sections 16 through 24 of article 10 of the Missouri Constitution.  Id.  When a Missouri statute conflicts with the Missouri Constitution, the statute is invalid.  Labor's Educ. and Political Club Indep. v. Danforth, 561 S.W.2d 339, 343 (Mo. 1977).

The district court ruled that the permit fee in section 644.052.2 is rendered invalid by the following  provision of the Hancock Amendment:

> The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions.  A new activity or service or an

increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

Mo. Const. art. 10, § 21 (emphasis added). The court based its Hancock Amendment analysis on the first sentence of this section. City of Glasgow, 966 F. Supp. at 906. The court ruled that although Glasgow is not required by state law to operate a water treatment facility, the permit fees in section 644.052.2 are "required" under the Hancock Amendment as that term was interpreted by the Supreme Court of Missouri in Missouri Municipal League. Id. at 907. The court determined that the state had fully funded the administration of the permit program prior to the passage of the Hancock Amendment and that after the enactment of the section 644.052.2 permit fee requirements, the permit program was now funded, at least in part, by cities. Id. Thus, the court ruled that the permit fees were unconstitutional because "there has been a reduction in the state financing" of the permit program in violation of the Hancock Amendment. Id.

The state first claims that the permit fees are not "required" under state law and therefore do not violate the Hancock Amendment. The opinion in Missouri Municipal League requires us to reject this argument. In Missouri Municipal League, a group of cities claimed that a state statute that required them to pay a fee to have their drinking water tested by a state lab violated the Hancock Amendment. 932 S.W.2d at 402. The state argued that because the provision of drinking water was a "discretionary activity" for a city, it was not "required" by state law and, therefore, the Hancock Amendment did not bar the state from charging local governments a fee to have their drinking water tested. Id. The Supreme Court of Missouri rejected this argument, explaining that it would "thwart the purpose of the Hancock Amendment" to allow such a distinction between services and activities that a local government must provide for its residents under state law and those that it provides at its discretion. Id. at 402-03.

The court stressed that "[o]nce the state imposes a requirement on a political subdivision, it makes no difference whether the underlying service is one traditionally performed by the government." Id. at 403. Thus, the court held that the drinking water testing fee was "required" under the Hancock Amendment. Id.

Under Missouri Municipal League, it is irrelevant to the Hancock Amendment analysis that the operation of Glasgow's water treatment facility is not required by state law. Section 644.052.2 states that municipalities "shall" pay the operating permit fee, and section 644.055 provides penalties for those cities that do not pay the fee. The permit fees are "required" by the state for purposes of the Hancock Amendment.

The state next argues that section 644.052.2 does not violate the Hancock Amendment because the permit fees are part of the State's implementation of federal requirements. We disagree. The state is not required to administer its own permit program under federal law, but it may elect to do so. See 33 U.S.C. § 1342(b) (providing that a state may voluntarily administer its own permit program after receiving approval from federal authorities). Federal law does not require the state to charge a fee for obtaining a permit. Thus, the permit fees at issue here are simply requirements of Missouri state law and therefore "must conform to the requirements of the Missouri Constitution." Missouri Mun. League, 932 S.W.2d at 403.

Finally, the state argues that the district court erred in ruling that permit fees in section 644.052.2 violate the Hancock Amendment because Glasgow has failed to prove that the state decreased its proportion of funding for the administration of the permit program, citing Fort Zumwalt School District v. State of Missouri, 896 S.W.2d 918, 922 (Mo. 1995). In Fort Zumwalt, the plaintiffs claimed that the Hancock Amendment required the state to maintain the same proportion of funding for state-mandated special education services in each school district as it provided prior to the passage of the Hancock Amendment. 896 S.W.2d at 922. The Supreme Court of Missouri agreed and held that the Hancock Amendment "requires the state to

-9-

appropriate funds for financing special education in local school districts in amounts sufficient to keep the state's contribution to the cost of special education in the school districts at the same ratio as existed in fiscal year 1980-81," the time of the Hancock Amendment's passage. Id. The court further explained that the "state's liability is limited to the state's mandated activity and the state financed proportion of the cost of that activity in effect in 1980-81." Id. at 923. The court then remanded the case to the trial court to determine this ratio for each school district. Id.

As explained above, at the time Missouri voters passed the Hancock Amendment, the state charged cities a filing fee of $75 to obtain a permit to operate a water treatment facility. See Mo. Ann. Stat. § 644.051.9 (West 1989). Missouri law provided that these filing fees were to be used to fund the administration and enforcement of the state's water pollution laws. Id. Similarly, under current Missouri law, the permit fees collected from cities pursuant to section 644.052.2 "shall" be used "solely for the administration of" the state's water pollution laws. Mo. Ann. Stat. § 644.054 (West 1998).

Under Fort Zumwalt, we must determine if the state has decreased its proportion of funding for the administration of the state water pollution laws by increasing the fees charged to cities to obtain a permit to operate a water treatment facility. To make this determination, we must first find the state-funded proportion of the costs of administering the state water pollution laws in fiscal year 1980-81, the time of the Hancock Amendment's passage. See Fort Zumwalt, 896 S.W.2d at 922. Second, we must find the state-funded proportion of the costs of administering the state water pollution laws today. Id. Finally, we must compare these two proportions to see if the state has unlawfully decreased its proportion of funding for the costs of administering the state water pollution laws. Id.

The district court erred in applying the first of these three steps when it implicitly ruled that the state had funded all of the costs of administering the state water pollution

-10-

laws prior to the Hancock Amendment's passage. As shown above, the filing fees charged to cities prior to the passage of the Hancock Amendment were used by the state to fund at least some of the costs of administering the state water pollution laws. This case is therefore unlike Missouri Municipal League, in which the state had funded 100 percent of the costs of the drinking water testing program prior to the passage of the Hancock Amendment. In that case, any fee charged to cities for the drinking water testing program represented a decrease in the state-funded proportion of the program. See 932 S.W.2d at 401. In this case, the state has never funded 100 percent of the costs of administering the water pollution laws—the state has always charged cities some type of fee to obtain a permit to operate a water treatment facility and has used the fees to fund at least some of the costs of administering the state water pollution laws. Thus, Fort Zumwalt, rather than Missouri Municipal League, controls here. The state may lawfully increase the fees charged to cities for operating permits so long as the state continues to fund the costs of administering the state water pollution laws in the same proportion as existed at the time of the Hancock Amendment's passage. However, if the state funding proportion has decreased, then the amount of the permit fees that represent a decrease in that proportion violates the Hancock Amendment.

The record before us does not contain the evidence necessary to determine if any of the permit fees in section 644.052.2 represent a decrease in the state-funded proportion of the costs of administering the state water pollution laws. We therefore reverse the district court's ruling that section 644.052.2 violates the Hancock Amendment, and we remand to the district court for a determination of whether the state has unlawfully decreased its proportion of funding for the costs of administering the state water pollution laws by charging Glasgow operating permit fees pursuant to section 644.052.2. See Fort Zumwalt, 896 S.W.2d at 922-23.

## C. Ordering the State to Issue Glasgow a Permit

Because we remand the case for a determination of whether the permit fees in section 644.052.2 represent an unlawful decrease in the state-funded proportion of the costs of administering the state water pollution laws, we also reverse the district court's ruling ordering the state to issue Glasgow a permit to operate its water treatment facility.

## III. Conclusion

We reverse the district court's judgment and remand for the issuance of an order declaring Glasgow to be in violation of federal law and enjoining Glasgow from discharging sludge from its water treatment facility into the Missouri River without obtaining an operating permit. We also remand for a determination of whether the operating permit fees in section 644.052.2 represent a decrease in the state-funded proportion of the costs of administering the state water pollution laws in violation of the Hancock Amendment to the Missouri Constitution. Finally, we reverse the district court's ruling ordering the state to issue Glasgow a permit to operate its water treatment facility.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS. EIGHTH CIRCUIT.