**ESSEX CONTRACTING, INC.,**
**Plaintiff–Respondent,**

v.

**CITY OF DESOTO,**
**Defendant–Appellant,**

v.

**DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS OF the STATE of MISSOURI,**

and

**Department of Natural Resources of the State of Missouri, Third–Party Defendants–Appellants,**

and

**Federal Insurance Company, Defendant on Counterclaim.**

**Nos. 55010, 55702 and 56091.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 13, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1989.

Application to Transfer Denied
Sept. 12, 1989.

Weier, Hockensmith & Sherby, Dana Hockensmith and Kurt A. Hentz, St. Louis, for Essex.

Wegman, Gasaway, Stewart, Schneider, Dickhaner, Tesreau & Stoll, Mark Thomas Stoll, Hillsboro, for City of DeSoto.

William Webster, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for Departments.

KAROHL, Judge.

Consolidated appeals of City of DeSoto [City] and two State of Missouri government departments follow summary judgment in favor of plaintiff, Essex Contracting, Inc. [Essex], against defendant City and judgment over in favor of defendant City, against third-party defendants, Department of Labor and Industrial Relations of the State of Missouri [Department of Labor] and Department of Natural Resources of the State of Missouri [DNR].

The trial court entered a money judgment on May 23, 1988, in the amount of $34,683.93 plus interest at the legal rate from June 4, 1987. At the time judgment was entered for Essex on its claim for charges due to it as general contractor on a construction contract, there was pending a counterclaim filed by City regarding unrelated provisions of the contract. On September 27, 1988, the trial court made an express finding there was no reasonable excuse for delay and found both May 23, 1988, judgments final and appealable. Defendant City appealed from the judgment to this court. Third-party defendants filed an appeal with the Supreme Court of Missouri because the petition for declaratory judgment and other relief included a challenge to the constitutionality of the application of §§ 290.210–290.340 RSMo 1986. The Supreme Court ordered its case transferred to this court "which has jurisdiction over the appeal."

On June 12, 1987, Essex filed a petition for declaratory judgment and other relief. The aim of the suit was to obtain final payment under a July 5, 1985, contract wherein Essex agreed to construct a waste

water treatment system for City. Specifically, it claimed $34,683.93 due and owing for work performed on the project in installing ductile iron piping within the waste water treatment facility. Essex utilized laborers who were members of Laborers District Council in installing the pipe and not members of Pipefitters Local Union No. 562. It paid laborers', not pipefitters', wages for their work. The work was completed and certified by City's engineer. City and third-party defendants never contested that the work was performed in a good and workman-like manner. City requested payment to Essex from DNR, but DNR denied the request at the direction of the Department of Labor.

Funds for construction of the waste water treatment system were supplied by federal and state grants. There is an "echo" that City also contributed fifteen percent of the cost. DNR was the grant administrator for a federal EPA waste water construction grant to City pursuant to the Clean Water Act of 1977, Pub.L. No. 95–217, 91 Stat. 1566 (1977), as amended, and under a delegation agreement between the EPA and DNR effective October 17, 1984, as amended June 24, 1985. DNR is also the administrator for a State of Missouri grant to City for sewage treatment works. DNR controlled all the funds for the project, both federal and state. City did not possess, nor control, any funds for payment for services and materials provided under contract with Essex, the general contractor.

Essex was obligated by the contract to comply with the Missouri Prevailing Wages on Public Works Law, §§ 290.210–290.340 RSMo 1978. Section 290.230.1 requires payment of "[n]ot less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed...." Section 290.230.1 RSMo 1978. Section 290.290.1 mandates Essex "keep full and accurate records clearly indicating the names, occupations and crafts of every workman employed by [it] in connection with the public work together with an accurate record of the number of hours worked by each workman and the actual wages paid therefor." Section 290.290.1

RSMo 1978. The statute does not require contractors and subcontractors to maintain records as to the work performed by each employee or craft. Accordingly, there was no record of the number of hours laborers worked while installing ductile iron pipe.

Sometime in 1986, representatives of Pipefitters Local Union No. 562 contacted the Department of Labor and complained that installation of ductile iron piping should have been performed by members of the Pipefitters Local. The position of the Pipefitters Local in this court is that plaintiff Essex was contractually and legally obligated to pay the workers who performed the work at the pipefitters' rate of pay, whether the work was done by members of the Laborers Council or Pipefitters Union. The Department of Labor adopted that position.

The Department of Labor reviewed payroll records of Essex for the period September 14, 1985, through August 16, 1986. It found that laborers worked 6,071.5 regular hours and 286 overtime hours during that period. These workmen were paid equal to or more than the required prevailing hourly laborers' rates for all hours they performed laborers' duties. The Department of Labor could not determine from the records the number of laborers or the number of hours laborers worked to complete the installation of process piping. However, by letter of February 6, 1987, the Department of Labor notified Essex of these facts [total hours laborers worked and payment at laborers' rates] and "concluded [it estimated] that 80% of *all* laborers [during the estimated installation period] were performing the [process piping] function." It then determined that Essex had underpaid laborers $3.85 for regular hours and $5.33 for overtime based upon its conclusion that the installation of processed piping in Jefferson County required pipefitters' wages. Accordingly, by this letter the Department of Labor informed Essex that $26,270 would be withheld from final payment under the contract.

On April 9, 1987, the Department of Labor sent a letter to City setting forth the same information as previously presented

to Essex. In addition, the Department of Labor notified City that § 290.250 requires, among other things, that:

> The contractor shall forfeit as a penalty to the state, county, city and county, city, town, district or other political subdivision on whose behalf the contract is made or awarded ten dollars for each workman employed, for each calendar day, or portion thereof, such workman is paid less than the said stipulated rates for any work done under said contract.... Section 290.250 RSMo 1978.

On the authority of this section and its determination that Essex failed to provide proper wages to its employees on 842 occasions, a penalty of $8,420 was announced. The underpayment of wages, as determined by the Department of Labor, when added to the penalty, created a total of $34,683.93. The Department of Labor directed this sum be withheld from the final payment due Essex. This lawsuit was filed to request a declaration there was no violation of the Prevailing Wages Law and for judgment for the balance due. The trial court made no express declaration of compliance. The money judgment implies such finding. The issue is whether that finding is supported by summary judgment facts.

City's position, alleged in a third-party petition against the Department of Labor and the DNR, is that if it owes Essex then the grant administrator owes it a like amount. City does not dispute the claim made by Essex that Essex performed the work on the process piping according to the plans and specifications. Nor does City dispute the fact that Essex is entitled to be paid for the work unless the objection raised by the Department of Labor and the DNR is valid.

When Essex filed suit against City it did not name the State of Missouri as a party. However, it did furnish a copy of the suit papers to the Attorney General's office. The Attorney General filed an entry of appearance on the authority of Rule 87.04 and was afforded an opportunity to oppose the motion for summary judgment on behalf of third-party defendants, the Department of Labor and the DNR.

Before addressing the merits presented by the appeal of City and the appeals of the departments, four jurisdictional questions must be resolved.

■ First, there is a question of finality of judgment for purposes of appeal. The trial court entered summary judgment on May 23, 1988. At that time there was a pending counterclaim filed by City against plaintiff Essex which was not involved in the motion for summary judgment and was not decided. The May 23, 1988, judgment did not comply with the requirements of Rule 74.01(b), effective January 1, 1988. The court did not expressly determine that there was no just reason for delay. Rule 74.01(b) requires such determination to qualify for an immediate appeal. Defendant City, therefore, filed a premature appeal from the judgment on June 20, 1988. The judgment of May 23, 1988, became final for purpose of appeal on September 27, 1988. On that day the court made an express determination that there was no just reason for delay in entering the judgments. It also found "the court's prior order of summary judgment [is] a judgment under Rule 74.01 for appeal." Essex then filed a new appeal of the judgment.

Second, our Supreme Court has determined that the original appeal by the Department of Labor and the DNR was not within the exclusive jurisdiction of the Supreme Court of Missouri under Mo. Const. Art. V, § 3. Of course, we accept that determination. We note that the petition of Essex for declaratory judgment and other relief recites, as one pleading, §§ 290.-210–290.340 RSMo 1978 is unconstitutional as applied to Essex. The factual allegations related to this are that the determinations made by the Department of Labor that prevailing wages were not paid, because pipefitters' wages were required, was not made under circumstances affording Essex an opportunity for a hearing or an appeal to contest that finding. Otherwise stated, Essex's position was the Department of Labor was arbitrary in unilaterally concluding pipefitters should do work routinely done in Jefferson County by laborers, or, pipefitters' wages should be

paid to laborers if laborers did the work. However, Essex's motion for summary judgment does not rely on any of the allegations regarding unconstitutionality of statute, per se, or in application. Grounds for the motion for summary judgment relied entirely on other matters. The judgments were not based on any determination that any statute was unconstitutional. The constitutional challenge was not before the court on motion for summary judgment.

 Third, if resolution of the factual and legal question of a union jurisdictional dispute is required before the court can declare Essex complied with state prevailing wage provisions, then there is a question of whether a state court has jurisdiction or whether the National Labor Relations Board [NLRB] has exclusive jurisdiction.[1]

We find the NLRB did not have exclusive jurisdiction over the contract dispute between Essex and City. City did not raise a jurisdictional question based on a dispute between unions as a defense. City does not contend that pipefitters were the proper employees to perform the services, nor that pipefitters' wages were required. City does not dispute that Missouri Laborers District Council members ordinarily and routinely performed processed piping labor in Jefferson County during the period of the contract. The order to withhold payment implies the Department of Labor *may* have found pipefitters ordinarily and routinely did such work. However, the record discloses no facts to support that view.

Section 290.210(5) RSMo 1978 defines prevailing hourly wage rates to be wages paid generally in the locality in which the public works is being performed, to work-

men engaged in work of similar character, including that basic hourly rate of pay and the amount of the rate of contributions for various fringe benefits. The duty assigned to the Department of Labor by § 290.335 RSMo 1978 [Notice of Violation] does not include a determination of jurisdictional disputes between unions.

Section 290.250 RSMo 1978 recognized wage rates will vary by locality in which the public works project is built. A contractor has no express statutory obligation to hire a particular type or class of employee to perform particular tasks, although it may have such an obligation under a collective bargaining agreement. *City of Kennett v. Labor and Industrial Relations Commission*, 610 S.W.2d 623 (Mo. banc 1981). It must, however, comply with the Prevailing Wage Law. In the instant case, the relevant locality was Jefferson County. Counsel for Eastern Missouri Laborers' District Council informed the Department of Labor the disputed work was properly laborers' work and the compensation laborers' wages. The record is devoid of any indication that the Department of Labor held a hearing or in any other manner relied upon opposing evidence in finding pipefitters' wages were required in Jefferson County during the relevant period, for the performance of the work in issue.

For our purposes we find a resolution of a union jurisdictional dispute involving pipefitters' or laborers' wages was not a prerequisite and did not deprive the trial court of subject matter jurisdiction over plaintiff's claim against City or City's third-party claims against the Department of Labor and the DNR. In so finding we note: (1) the Pipefitters Local never filed an unfair labor practice complaint with the

1. Near the time the present dispute arose in Jefferson County, Missouri a similar issue was decided by the National Labor Relations Board. The NLRB proceeding involved Essex and Pipefitters Local Union No. 562 and installation of process piping in a waste water treatment plant in St. Charles County, Missouri. On January 4, 1988, by letter, the Laborers Union notified the Department of Labor of a NLRB settlement agreement between Pipefitters Local and Essex whereby the Pipefitters Local disclaimed interest in installation of pipelines in a similar project in the St. Charles County waste water treatment plant. In that NLRB case, Essex had filed a charge that the Pipefitters Local had violated Section 8(b)(4)(D) of the Labor Management Relations Act by engaging in conduct "where an object was forcing or requiring Essex Contracting Inc. to assign to employees represented by Pipefitters Local 562 rather to employees represented by Laborers Local 660 the installation of pipelines which move waste water through the treatment process at a St. Charles, Missouri waste water treatment plant."

NLRB arising out of the facts here involved; (2) 29 U.S.C. § 158(b)(4)(D) (1973) provides that it is an unfair labor practice to engage in any strike *or other coercive action* which would force or require an employer to assign particular work to employees in a particular labor organization or in a particular trade, craft or class unless such employer is failing to conform to an order or certification of the NLRB determining the bargaining representative for employees performing such work; (3) the Department of Labor did not refer its findings that Essex failed to pay the prevailing wage by failing to pay pipefitters' wages, to the Attorney General on the authority of § 290.335 RSMo 1978 and it did not utilize the notice of violation and failure to comply authority granted in that section; and, (4) the Attorney General never filed suit in the name of the State in Jefferson County, or elsewhere, to enjoin payments because of such violations. Essex was not obligated to raise a union jurisdictional dispute, particularly where it claims there was no such dispute. Its state court lawsuit for breach of contract was an available avenue for relief.

 We conclude that third-party defendants, the Department of Labor and the DNR, are not empowered, under the guise of enforcing the provisions of the contract relating to prevailing wage laws, to unilaterally consider and resolve what is, in fact, a union jurisdictional dispute. The Prevailing Wage Law does not authorize the administrator of a public works project to withhold payments from contractors in situations such as this where: (1) the labor utilized was the proper craft in the locality where the services were rendered; (2) the grant administrator failed to follow the violation and enforcement provisions of § 290.335 RSMo 1978; (3) no suit for enforcement of the Prevailing Wage Law was filed by the Missouri Attorney General pursuant to § 290.335 RSMo 1978; and, (4) City intends not to pursue a determination or to question whether Essex violated the Prevailing Wage Law. The law authorizes the Department of Labor to withhold wages only if a certain craft is demonstratively proven to be the craft required or

less than the prevailing wage for that craft is paid.

The determination of the Department of Labor is suspect for the further reason that it asserted an estimate of the number of hours laborers worked installing processed piping. There is no documentary evidence to support that determination. Essex was not required by any provision of the Prevailing Wage Law to keep or maintain records reflecting which craft performed what services under a public works contract. Section 290.290.1 RSMo 1978 did not require a contractor or subcontractor to keep the type of record which the Department of Labor sought to use to resolve a union jurisdictional dispute. The records neither prove nor disprove which craft may properly perform ductile pipe work. The required records allow enforcement of laborers' wages for laborers and pipefitters' wages for pipefitters, but will not resolve union jurisdictional disputes.

 Fourth, third-party defendants conclude in their brief this court has jurisdiction to decide this appeal. However, within their brief they allude to the possibility that the provisions of Chapter 536 RSMo 1986 were the exclusive remedy available to Essex. As we understand this argument it is the position of the third-party defendants that: (1) the determination of the Department of Labor that Essex failed to pay prevailing wages for the installation of process piping was a contested case within the meaning of the provisions of §§ 536.063–536.110 RSMo 1986; (2) the Department of Labor shall determine prevailing hourly rate of wages in the locality in which a public works projects is to be performed for each type of workman required to perform work under the contract, and such determination or schedule of the prevailing hourly rate of wages shall be attached and made part of the specifications for the work, in accordance with § 290.250 RSMo 1978; (3) the Department of Labor's finding, ascertaining and declaring the prevailing hourly rate of wages, shall be final for the locality, unless reviewed under the provisions of §§ 290.210–290.340 RSMo 1986; (4) Section 290.260.7 RSMo 1986 au-

thorized review of a determination of prevailing hourly rate of wages in a locality in accordance with the provisions of Chapter 536 RSMo. They conclude such review was available to Essex only through Chapter 536.

We find no merit in this suggestion questioning jurisdiction to consider a declaratory judgment suit in the trial court or in this court. First, the provisions of §§ 290.250 and 290.260 RSMo 1986 relate to a periodic, general determination of prevailing hourly rate of wages to be paid in varying localities. The procedure set forth for determining and publishing advance determinations is distinctly different than deciding an existing dispute. Nor was the finding and order of the Department of Labor made in the context of a contested case under Chapter 536 because there was no charge, notice, hearing, judgment, findings of fact or conclusions of law, or record of proceeding. All of these are attributes of a contested case under Chapter 536. Sections 536.063–536.090 RSMo 1986. In addition, no advance determination was made by the Department of Labor that the work in question required compensation at pipefitters' rate. The suggestion of a possible jurisdictional defect, relying on Chapter 536 RSMo 1986 as an exclusive remedy for plaintiff Essex, is without merit.

■■■■ City claims plaintiff's proof of summary judgment facts was insufficient to support summary judgment for Essex. It argues a "genuine issue of material fact exists to Essex's compliance with the 'prevailing wages on public works law' of Missouri and related federal and state laws and regulations applicable to the contract." Third-party defendants argue the same position.

"When reviewing a ruling on a motion for summary judgment an appellate court must scrutinize the record in the light most favorable to the party against whom the motion was filed, according to that party all reasonable inferences which may be drawn from the evidence." *Gast v. Ebert,* 739 S.W.2d 545, 546 (Mo. banc 1987). The burden was upon Essex to prove all facts necessary to support a summary judgment,

as a matter of law. *See, Sturgeon v. State Bank of Fisk,* 616 S.W.2d 578, 582 (Mo. App.1981). The burden of proof is extremely high. *Molasky v. Brown,* 720 S.W.2d 412, 414 (Mo.App.1986). We find one material issue of fact was not proven and remains in dispute, namely, whether the installation of ductile iron piping within the waste water treatment facility in Jefferson County, Missouri, was properly laborers' work.

Essex recognized the requirements of §§ 290.230.1 and 290.210(5) RSMo 1978 in its petition. These sections require a contractor to pay prevailing hourly wages paid generally in the locality of the work to workmen engaged in work of similar character. The petition alleges "in accordance with the custom and practice of plaintiff, *and in accordance with* plaintiff's understanding of *the custom and practice in Jefferson County,* Missouri, Plaintiff employed members of Laborer's Local 718 for the installation of said ductile iron piping within the waste water treatment facility." (Our emphasis). It is apparent that the Department of Labor directed that payment be withheld made for the installation of the pipe because pipefitters' wages were required in Jefferson County for the work. Plaintiff alleged in the petition that laborers were proper for the pipe installation in the locality in which the work was performed. City denied that allegation which joined an issue of what type of worker was required to perform the work. If laborers were, as alleged in the petition, the proper workmen to install processed pipe then Essex did not violate the provisions of the contract requiring payment of prevailing wages. However, if pipefitters' wages were required in Jefferson County during the period of execution of the contract for installation of such pipe then Essex violated provisions of the contract and the decision of the Department of Labor to withhold payment was justified. The narrow question for our decision is whether Essex proved the summary judgment fact that laborers were properly employed to install the pipe under the contract.

In support of the motion for summary judgment Essex offered depositions, answers to interrogatories, requests for admissions, and an affidavit of a vice-president of the company. City offered a counter affidavit of City's Manager. We find no clear reference in depositions of City's Manager or a grant coordinator employed by City which committed City to the position that laborers were the proper craft for installation of the pipe. Similarly, we find no answers to interrogatories or admissions filed by representatives of the third-party defendants proving that fact.

The affidavit of Martin R. Toma, Vice-president of Essex, contains the following sworn statements of fact:

4. That such laborers performed such duties in construction of the plant including installation of piping. The piping installed was standard wasterwater conveyance piping which was bolted together, not welded.

5. That the laborers employed on the project possessed the skills, as laborers, necessary for the installation of such piping, and such installation was completed in a good and workmanlike manner and accepted by the City of De Soto.

6. That at no time during the project did the City of De Soto indicate to Essex Contracting, Inc. that work being performed on the project was not being performed by qualified workmen, nor was there any communication from City of De Soto to Essex Contracting, Inc. that workmen in crafts different than those actually provided on the project should be employed.

None of these sworn statements were opposed by the counter affidavit filed by City. However, none of these statements assert, as a sworn statement of fact, that laborers in Jefferson County working on public works projects customarily installed ductile iron pipe. Even if that fact could have been offered in the affidavit or admitted by employees of City, or presented by some other authority, it was not. The affidavit falls short. Accordingly, we find a genuine issue of material fact remains in dispute. On remand, that issue must be resolved. The existence of other issues of fact would arise only if laborers were not the proper workers.

We need not specifically reach other claims of trial court error. Some claims are resolved by the decisions regarding matters of jurisdiction. Others may be avoided or need not reoccur after remand.

We reverse and remand.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.