**PURLER–CANNON–SCHULTE, INC. and Karsten Equipment Company, Appellants,**

v.

**CITY OF ST. CHARLES and Missouri Department of Labor and Industrial Relations, Respondents.**

**No. ED 83325.**

Missouri Court of Appeals, Eastern District, Division One.

Oct. 7, 2004.

Daniel G. Vogel, Paul V. Rost (Asst.), Webster Groves, MO, Appellant.

Michael Pritchett, Gary L. Gardner (Asst.), Jefferson City, MO, Respondent–Department of Labor and Industrial Relations.

Robert E. Hoeynck, Jr., St. Charles, MO, Respondent–City of St. Charles.

John H. Goffstein, St. Louis, MO, Amicus Curiae–Mechanical Contractors, Plumbers & Pipefitters Local 562 & Plumbing Industry Council.

Ronald C. Gladney, St. Louis, MO, Amicus Curiae–Mo. State Labor Council, Mo. State Building & Construction Trades Council.

Carl S. Yendes, Springfield, MO Amicus Curiae–Mo. Municipal League.

James W. Farley, Platte City, MO, Amicus Curiae–Mo. Rural Water Assn.

MARY R. RUSSELL, Judge.

Purler–Cannon–Schulte, Inc. and Karsten Equipment Company ("Contractors") appeal from the trial court's granting of summary judgment in favor of the City of St. Charles and the Missouri Department of Labor and Industrial Relations ("Department").[1] Contractors assert that the trial court erred in that: (1) Department's enforcement of the Prevailing Wage Act violates article X, section 21 of the Missouri Constitution ("the Hancock Amendment"[2]); (2) Department's application of the Occupational Title Rule to outdoor pipe projects violates the Prevailing Wage Act; and (3) Department's interpretation of the General Laborer occupational title renders that provision void as applied because it results in key language being meaningless when it is applied only to work done on non-pressurized pipelines. We disagree with these assertions of error and affirm the trial court's grant of summary judgment in favor of Department.

Contractors are in the business of installing outdoor utility pipes in St. Louis, St. Charles, Franklin, Jefferson, Lincoln, and Warren Counties (collectively "Counties"). Contractors' work includes constructing and installing outdoor sewer

---

1. Amicus Curiae briefs were filed by Missouri Rural Water Association, Missouri Municipal League, and City of Springfield; Missouri State Labor Council, AFL–CIO, and Missouri State Building and Construction Trades Council; and Mechanical Contractors Association of Missouri, Plumbing Industry Council, and United Association of Plumbers and Pipefitters Local 562.

2. Article X, section 21 of the Missouri Constitution is part of what is known as the Hancock Amendment. For purposes of this opinion, we refer to section 21 as "the Hancock Amendment."

lines, water mains, and other pressurized pipelines, including those that can be classified as public works under section 290.210(7) RSMo 2000.[3] When Contractors engage in public works projects, they are bound by the requirements of Missouri's Prevailing Wage Act.[4]

Under the Prevailing Wage Act, Contractors are required to pay their workers "[n]ot less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed...." Section 290.230.1. Under the Act, the " '[p]revailing hourly rate of wages' means the wages paid generally, in the locality in which the public works is being performed, to workmen engaged in work of a similar character...." Section 290.210(5).

Department has statutory authority to promulgate administrative rules necessary to carry out the provisions of the Prevailing Wage Act. Section 290.240.2. In this capacity, Department enacted 8 CSR 30–3.060, known as the Occupational Title Rule, to describe and classify work of a similar character. This rule establishes occupational titles in order to aid Department in determining "the prevailing hourly rate of wages to be paid to each worker ... on a public works project, relative to the type of work performed...." 8 CSR 30–3.060 (description of purpose of the rule). "Each occupational title defines by name the type of work performed in the construction of a public works project." 8 CSR 30–3.060(1). Occupational titles are based on the nature of the work performed and consider industry classifications of work definitions. 8 CSR 30–3.060(2).

Department determines "the prevailing hourly rate of wages in each locality for each separate occupational title" involved in public works projects, and then issues annual wage orders setting forth the prevailing annual wages for each occupational title in all areas of the state. Section 290.262; 8 CSR 30–3.010.

This case originated when Department charged Contractors with a violation of the Prevailing Wage Act in December 1998. Department cited Contractors for paying workers installing water and sewer piping systems on Contractors' outdoor public works projects the Laborer wage rate, rather than the Pipe Fitter wage rate, on four specified pipe projects in St. Louis and St. Charles Counties. Department asserted that the work at issue fit the Pipe Fitter occupational title and should have been paid at the Pipe Fitter wage rate.[5] Department sought penalty payments, and Contractors brought suit for declaratory relief against Department.[6]

Contractors assert that Department's interpretation of the rules unlawfully applied the Pipe Fitter occupational title to non-mechanized activities involved in the installation of outdoor pipelines. Contractors argue that the Pipe Fitter occupational

3. All further statutory references are to RSMo 2000 unless otherwise indicated.

4. Missouri's Prevailing Wage Act was enacted in 1957 and is codified in Sections 290.210–290.340.

5. In the times and places at issue, the prevailing wage for the occupational title of Pipe Fitter was higher than the prevailing wage for the occupational title of Laborer.

6. City of St. Charles ("St. Charles") is also a defendant-respondent in this case. St. Charles contracted with Contractors on the construction projects involving the work at issue, and withheld payment to Contractors after Contractors were charged with a violation of the Prevailing Wage Laws. Because Contractors' points on appeal relate to Department's actions, and make no assertions of error as to the trial court's determinations as to St. Charles, we address Contractor's points on appeal as they apply to Department.

title applies only to work joining pipes, and further argue Missouri contractors have paid workers on outdoor pipe projects the General Laborer wage for non-mechanized work for over 35 years. They maintain that General Laborer wage rates have been the actual prevailing wages paid in Counties for over 40 years, and assert that Department has never before cited them for their historical practice of paying the General Laborer wage rate to workers on outdoor piping system projects.

Contractors further allege that Department's application of the occupational title of Pipe Fitter to the work at issue unlawfully attempts to alter the actual marketplace wage by unilaterally declaring that the higher Pipe Fitter wage rate must now be paid on outdoor pipe projects. They state this application of the Prevailing Wage Act requires payment of wages not based on the actual prevailing wage in the locality and is a violation of the Hancock Amendment, the Prevailing Wage Act, and the language of the rule itself.

The circuit court concluded that Department's application of the occupational title of Pipe Fitter was lawful, and it granted summary judgment in favor of Department. Contractors now appeal.

When considering appeals from summary judgments we review the record in the light most favorable to the party against whom judgment was entered and accord the non-movant the benefit of all reasonable inferences from the record. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's motion are considered true unless they are contradicted by the non-moving party's response to the summary judgment motion. *Id.* We review summary judgment *de novo*, and the propriety of summary judgment is purely an issue of law. *Id.* We uphold a trial court's granting of summary judgment so long as the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. In reviewing summary judgment, we evaluate the sufficiency of the evidence that supports the judgment and we will enter "such judgment as the trial court ought to have given." Rule 84.14; *Kramer v. Fallert*, 628 S.W.2d 671, 674 (Mo.App. 1981). A defending party in a suit can show any one of the following to establish the right to judgment as a matter of law: (1) undisputed facts negating any one of the plaintiff's proof elements; (2) that the plaintiff, even after an adequate period of discovery, has not produced, and will not be able to produce, sufficient evidence to allow the court to find the existence of any one of the claimant's proof elements; or (3) that there is no genuine dispute as to the existence of the facts necessary to prove the movant's properly pleaded affirmative defense. *Kesterson v. Wallut*, 116 S.W.3d 590, 597 (Mo.App.2003) (citing *ITT*, 854 S.W.2d at 381).

Contractors appeal the trial court's grant of summary judgment on three grounds.

**Does Department's Interpretation Violate the Hancock Amendment?**

Contractors first assert that the trial court erred in finding Department's interpretation of the Occupational Title Rule requiring payment of the Pipe Fitter wage rate did not violate the Hancock Amendment.

■ Before reviewing Contractor's first point, we must determine *sua sponte* whether we have jurisdiction to review this claim. *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994) (citing *ABC Fireproof Warehouse Co. v. Clemans*, 658 S.W.2d 28, 30 (Mo. banc 1983)). Contractors state that this case is not a chal-

lenge to the Occupational Title Rule or any decision by Department regarding modification of that rule. Instead, they indicate that this case is a substantive challenge to Department's *application* of the rule to require them to pay Pipe Fitter wages, and allege that its application of the rule violates the Hancock Amendment.

■ Missouri's Constitution grants the Supreme Court of Missouri exclusive appellate jurisdiction in all cases involving the construction of Missouri's revenue laws. Mo. CONST. art. V, section 3. However, "the Court of Appeals may decide legal issues concerning those laws if the issues raised in the appeal 'can be disposed of by the application of a prior [S]upreme [C]ourt construction.'" *Associated Gen. Contractors of Mo. v. Dep't of Labor & Indus. Relations,* 898 S.W.2d 587, 593 (Mo. App.1995) (citing *Equitable Life Assurance Soc'y v. State Tax Comm'n,* 852 S.W.2d 376, 383 (Mo.App.1993)) (hereinafter *"AGC"*). This principle has been applied in appeals involving the provisions of the Hancock Amendment and, therefore, we can apply Supreme Court of Missouri precedent regarding the Hancock amendment in our consideration of this case. *See Browning–Ferris Indus. v. Dance,* 671 S.W.2d 801, 806 (Mo.App.1984).

In relevant part, the Hancock Amendment states:

A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the [G]eneral [A]ssembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and dis-

bursed to pay the county or other political subdivision for any increased costs. Mo. CONST. art. X, section 21.

■ This portion of the Hancock Amendment is violated if *both* (1) the State requires a new or increased activity or service of a political subdivision *and* (2) the political subdivision experiences increased costs in performing that activity or service. *AGC,* 898 S.W.2d at 593 (citing *State ex rel. City of Springfield v. Pub. Serv. Comm'n,* 812 S.W.2d 827, 830 (Mo.App. 1991)). Article X, section 21 prevents the State from requiring *local governments* to begin a new mandated activity, or to increase the level of a previously mandated activity beyond its 1980–81 level, without appropriation of sufficient state monies to finance the costs of the new or increased activity. *Fort Zumwalt Sch. Dist. v. State,* 896 S.W.2d 918, 921 (Mo. banc 1995).

■ Contractors argue that Department's application of the Occupational Title Rule in this case violates the Hancock Amendment because it represents a change *in* Department's *application* of occupational classifications related to the work at issue. Contractors contend that prior to the Occupational Title Rule, work on outdoor pressurized pipe projects was considered to be in the occupational classification of General Laborer.

Prior to the implementation of the Occupational Title Rule, Department's Annual Wage Orders and project-specific wage determinations contained descriptions for work falling in certain occupational classifications.[7] The classifications in these orders and determinations included the classification of "General Laborer–Heavy Construction."[8] Tasks included within

---

7. The terms "occupational classification" and "occupational title" both refer to groupings of tasks Department considers to be work of a similar character. "Occupational classification" was the term used before the Occupa-

tional Title Rule, which now refers to these job task categories as "occupational titles."

8. The "heavy construction" designation refers to outdoor construction work. Indoor con-

the "General Laborer–Heavy Construction" occupational classification included "all work in connection with sewer, water, gasoline, oil, drainage pipe, conduit pipe, tile and duct lines and all other pipe lines."

Contractors allege that after the Occupational Title Rule was enacted, Department changed its position and began considering outdoor pressurized pipe project work to fall within the occupational title of Pipe Fitter, rather than General Laborer. They allege this change requires an "increased level of activity" beyond that required by existing law in that they must pay the higher Pipe Fitter wage rate, a cost which they will pass to political subdivisions and thereby cause a Hancock Amendment violation.

We do not agree that Department's application of the Occupational Title Rule requiring Pipe Fitter wages is "a new or increased activity or service" such that it violates the Hancock Amendment.

In an affidavit provided to the trial court, Colleen Baker, Department's Director of the Division of Labor Standards ("Director"), attested that Department has consistently interpreted the Prevailing Wage Act to require payment of Pipe Fitter wages for all workers who fabricate, install, or repair pressurized piping systems. She also attested that Department applied this interpretation to Contractors' public works projects at issue.

Director declared that prior to the Occupational Title Rule, the definitions for cate-

gories of Laborers were intended to differentiate between different kinds of work done by distinct categories of Laborers, not to differentiate between the work of Laborers versus Pipe Fitters. According to Director, the description for "General Laborer–Heavy Construction" that was used before the Occupational Title Rule was not intended to expand the work of the occupational classification of Laborer to include work related to the actual fabrication, installation, and repair of pressurized pipe.[9] Prior to 1996, Department's Annual Wage Orders listed pipeline work in the General Laborer classification, and specifically listed "Pipe Fitters" among the work categories for indoor "Building Construction Rates" designated in the order. The record, however, does not reveal that any work task descriptions for the category of "Pipe Fitters" existed at that time. Department implied that the phrase "all work in connection with sewer, water, gasoline, oil, drainage pipe, conduit pipe, tile and duct lines and all other pipe lines" in the "General Laborer" description used before the Occupational Title Rule meant "all work *that would typically be done by a Laborer*."

Director admitted that, prior to the Occupational Title Rule, no Annual Wage Orders or project-specific wage determinations included work *descriptions* within the occupational classification of Pipe Fitter. Director, however, distinguished the earlier job classifications from the occupational title categories created by the Occupational Title Rule in 1996. The Occupational

struction work is designated as "building construction" and is separately classified.

9. Department asserts that work involved in the installation of pressurized piping is not similar to work done on non-pressurized piping, and notes that there are differences in tools, tasks, and techniques involved. This was the finding of the Labor and Industrial Relations Commission in its "Order of Com-

mission" in March 1997, issued in response to objections filed to Annual Wage Order No. 4 regarding work related to the occupational title of "Laborer." The Commission also made these findings in April 1997 in response to a similar objection brought on behalf of counties in Eastern Missouri, some of which are now involved in this case.

Title Rule "formally define[s] the occupational titles ... in a consistent and uniform manner so the Department and the contractors bidding on and performing public works projects would both be able to identify with reasonable certainty 'work of a similar character' relative to the applicable prevailing hourly wage rate required to be paid by contractors under the [Prevailing Wage] Act." *AGC*, 898 S.W.2d at 590.

The Occupational Title Rule currently lists job tasks under each occupational title. Under the Occupational Title Rule, "Pipe Fitter" tasks include work on "all *pressurized* piping systems[,]" and "General Laborer" tasks for heavy/highway construction are described as "work in connection with *non[-]pressurized* pipelines." 8 CSR 30–3.060(8)(T) (emphasis added); 8 CSR 30–3.060(8)(K)(2)(A) (emphasis added).

Contractors argue that a change in Department's application of job classifications is evidenced by the fact that prior to enactment of the Occupational Title Rule, nothing published by Department distinguished wage rates based on whether work was done on "pressurized pipe" or "non[-]pressurized pipe." We do not find, however, that the definitional changes in the Occupational Title Rule illustrate an increased activity has been imposed. Contrary to Contractors' assertions, we find nothing in the Occupational Title Rule that mandates that contractors utilize a certain type of worker to install or repair either pressurized or non-pressurized piping systems. Contractors retain the ability to hire Laborers to work on outdoor pipe projects, but are required to pay them the prevailing wage appropriate for the type of work they perform, as categorized by the task descriptions in the Occupational Title Rule.

Contractors additionally allege that the imposition of Pipe Fitter wages pursuant to the Occupational Title Rule is a new requirement because it is contrary to the requirements Department's wage orders previously imposed. Contractors argue that Department lacked the authority to impose Pipe Fitter wage rates prior to the enactment of the Occupational Title Rule, as articulated in the *Essex* cases. *Essex Contracting, Inc. v. City of DeSoto*, 775 S.W.2d 208 (Mo.App.1989) (hereinafter "*Essex I* "); *Essex Contracting, Inc. v. City of DeSoto*, 815 S.W.2d 135 (Mo.App. 1991) (hereinafter "*Essex II* ").

*Essex I* and *Essex II* were decided before the existence of the Occupational Title Rule. The *Essex* cases arose when a contractor sued a city for declaratory relief alleging that Department wrongfully found it in violation of the Prevailing Wage Act. *Essex I*, 775 S.W.2d at 210–11. Department charged the contractor with a prevailing wage violation because it had paid the Laborer wage rate for work Department believed should have been paid at the Pipe Fitter wage rate. *Id.* at 211. Based on the evidence presented in the case, the trial court found that Laborers customarily installed ductile iron pipe in the locality at issue, and, therefore, the Laborer wage rate accurately reflected the prevailing wage for that work in that locality. *Essex II*, 815 S.W.2d at 138. This court found no error in that holding, but we made no decisions relating to Department's right to classify work of a similar character. *See id.* at 139.

Nothing in the *Essex* cases rejected Department's position that work related to the installation of the pipe was similar to the work done by Pipe Fitters. We stated, however, that Department could not use the prevailing wage laws to resolve union jurisdictional disputes because it had no statutory authority in the prevailing wage laws to determine which type of workmen are required to perform particular tasks on a public works project. *Essex*

*II*, 815 S.W.2d at 138–39 (citing *Essex I*, 775 S.W.2d at 214). Instead, we held that Department could withhold wages under the prevailing wage laws " 'only if a certain craft [was] demonstratively proven to be the craft required or less than the prevailing wage for that craft is paid.' " *Id.* (quoting *Essex I*, 775 S.W.2d at 214).

Following our decision in *Essex II*, Department enacted the Occupational Title Rule to clarify what crafts relate to various work titles. As we discuss above, nothing in the Occupational Title Rule forces Contractors to hire certain types of workmen. Rather, it categorizes work tasks by occupational title. Contrary to Contractors' assertions, we do not find that Department's actions in this case are contrary to our court's decisions in *Essex I* or *Essex II*.

Contractors allege that Department's 1999 publication, "Missouri Prevailing Wage Law Some Basic Facts," reveals that Department developed the Occupational Title Rule "to overcome the problem identified by the court in [*Essex II* ] that [Department] did not have authority to determine which type of workmen are required to perform a particular task on a public works project." DIV. OF LABOR STANDARDS, MO. DEP'T OF LABOR & INDUS. RELATIONS, MO. PREVAILING WAGE LAW SOME BASIC FACTS 3 (August 1999). We note, however, that Department's "Basic Facts" publication went on to state that the rule "does not state who must perform the work identified in the title." *Id.* at 3–4. It explains: "Although the titles have names similar to terms used to describe certain unions, there is no requirement that the workers must be union members, or that only workers identified by that term can perform the work tasks identified in the title ... [instead] [t]he rule simply groups together the tasks that are similar in character and sets the wage rate for the tasks

performed." *Id.* at 4 (citing *AGC*, 898 S.W.2d at 595). This language supports Department's assertions that the Occupational Title Rule imposes no new requirements, but rather clarifies job classifications based on work of similar character to ease the application of the prevailing wage laws.

We think the *AGC* case is instructive. In *AGC*, the Western District agreed with a trial court's finding that the Occupational Title Rule did not impose an "increased activity" in violation of the Hancock Amendment because it "does not require any government entity or contractor to perform any activity or render any service that is not already mandated by the existing Prevailing Wage Act." 898 S.W.2d at 593. The *AGC* court noted that because contractors had been required to pay the prevailing wage rate for each type of work performed even prior to the enactment of the Occupational Title Rule, there was no new mandated activity or service imposed by the rule because they were still required to comply with the Prevailing Wage Act. *Id.*

The *AGC* court also found no additional costs were imposed on political subdivisions by the Occupational Title Rule that would create a Hancock violation. *AGC*, 898 S.W.2d at 594. The *AGC* court upheld the trial court's conclusion that the Occupational Title Rule "merely serve[d] to clarify the existing prevailing wage statute without creating any additional cost to any political subdivision or contractor presently in compliance with the Prevailing Wage Act," and, therefore, did not violate the Hancock Amendment. *Id.*

Though the application of the work titles from the Occupational Title Rule changes the determinations of what is the correct prevailing wage to pay for pipe fitting work, nothing in the Occupational Title Rule alters Contractors' responsibility to

comply with the prevailing wage laws of this state.[10] We, therefore, cannot find that the application of the Occupational Title Rule in this case has created a new requirement such that a Hancock violation could be proved.

■ Even if the Department's application of Pipe Fitter wages to the work at issue in this case represented a change in position or a new requirement, we could not find a Hancock violation in Department's application of the Occupational Title Rule to Contractors. Department's application of the Pipe Fitter wage rate to Contractors cannot be said to "[require] a new or increased level of activity or service" from a *political subdivision.*

We disagree with Contractors that *Boone County Court v. State* is analogous to this case. 631 S.W.2d 321 (Mo. banc 1982). In *Boone County Court*, our Supreme Court found that a state law requiring certain political subdivisions to pay county collectors higher wages was a state-imposed "increase in the level of any activity" that violated the Hancock Amendment. *Id.* at 323, 325–26. Contractors cite the court's statement that " '[a]ny activity' as applied to county functioning encompasses every increase in the level of operation in that government." *Id.* at 325. The holding in *Boone County Court*, however, is not instructive in this case. Whereas the impermissible increase was directly imposed on the county in *Boone County Court*, here, it is the contractor, not the political subdivision itself, who is mandated to pay additional costs.

We also do not believe the holding in *Missouri Municipal League v. State* is

analogous to this case. 932 S.W.2d 400 (Mo. banc 1996) (hereinafter "MML"). In *MML,* a group of Missouri municipalities alleged a Hancock violation where an amended state statute required public water suppliers to pay the costs of public drinking water testing. *MML,* 932 S.W.2d at 401–02. Previously, the state had funded the water testing. *Id.* at 401. Our Supreme Court held that requiring the municipalities to pay the costs of the testing was a "required service" that imposed increased costs on the municipalities in violation of the Hancock Amendment. *Id.* at 402–03.[11] The court found that article X, section 21 addresses "any existing activity or service," and makes no distinction between governmental and proprietary, or discretionary, activities. *Id.* The court stated that "[o]nce the state imposes a requirement *on a political subdivision,* it makes no difference whether the underlying service is traditionally performed by the government." *Id.* at 403 (emphasis added).

In *MML* municipalities were forced to endure expenses to provide a service they traditionally had not provided.· In contrast, political subdivisions in this case are required only to continue to ensure that the contractors they hire comply with the prevailing wage laws, which they have long been expected to do. Unlike in *MML,* here no new statutory requirements are being mandated on political subdivisions.

Additionally, we agree with the trial court's finding that political subdivisions could choose to avoid any increased costs indirectly imposed on them through De-

---

10. *See* text *supra* at 12–13 (discussing the holding in *AGC, 898 S.W.2d 587,* that application of the Occupational Title Rule does not violate the Hancock Amendment because it requires no activity or service not already required under the Prevailing Wage Act).

11. The state argued that providing water was a discretionary activity, and, therefore, requiring municipalities to pay the costs of testing could not be considered a "required" activity. *MML,* 932 S.W.2d at 403.

partment's application of the Occupational Title Rule to require Pipe Fitter wages.[12] Nothing in Department's application of the Occupational Title Rule requiring that Contractors pay Pipe Fitter wages mandates that political subdivisions must bear increased costs. Contractors cite no authority for expanding the application of the Hancock Amendment to cases in which increased costs are imposed on a non-governmental entity, but do not directly increase costs to political subdivisions themselves.[13]

We find that Contractors did not present facts necessary to show Department's application of the Occupational Title Rule violates the Hancock Amendment. Point denied.

### Does Department's Interpretation Violate the Prevailing Wage Act?

■ Contractors argue in their second point that the trial court erred in finding that Department's interpretation of the Occupational Title Rule requiring payment of the Pipe Fitter wage rate did not violate the Prevailing Wage Act. Contractors assert that Department's application of the Pipe Fitter wage rate violates the Prevailing Wage Act because it imposes a wage rate contrary to the actual wage rates paid to workers in the localities at issue.[14] Contractors argue that Department is attempting to set the prevailing wage by "manipulation of the wage classification to change the rate from the historical wage practices ... and not the marketplace." We disagree.

■ Department has the authority to establish the necessary administrative rules and regulations to carry out the provisions of the Prevailing Wage Act. Section 290.240.2. Application of the prevailing wage laws requires that Department determine what work is "of a similar character." *State v. Lee Mech. Contractors, Inc.*, 938 S.W.2d 269, 271 (Mo. banc 1997). As

---

**12.** The trial court suggested that a political subdivision could avoid increased costs by choosing not to go through with a contemplated public works project, or could use its own employees to perform the desired work. We note also that while the Pipe Fitter wage rate related to the work at issue was greater than the Laborer wage rate, that is not a certainty. The prevailing wage rate for the Pipe Fitter occupational title is typically, but not always, higher than the prevailing wage rate for the Laborer occupational title.

**13.** Contractors argue that Department's assertions that no increased costs are imposed "directly" on political subdivisions creates a "legal facade" that we should reject. Contractors cite our Supreme Court's holding in *Division of Labor Standards v. Friends of the Zoo*, stating that the prevailing wage laws are a requirement imposed directly on public bodies that they "may not circumvent ... by a 'carefully constructed legal facade.'" 38 S.W.3d 421, 423 (Mo. banc 2001) (citing *State ex inf. Webster ex rel. Div. of Labor Standards v. City of Camdenton*, 779 S.W.2d 312, 316 (Mo.App.1989)) (rejecting city's attempt to

claim that workmen were not performing work "on behalf" of a public body where they were hired to work on city zoo project funded by private charitable organization). Unlike in *Friends of the Zoo*, however, there is no evidence in the instant case that City is attempting to circumvent the prevailing wage laws. We, therefore, do not find *Friends of the Zoo* analogous to this case.

**14.** Contractors object to the trial court's characterization of their argument as a challenge to Department's placement of pressurized pipe work within the Pipe Fitter occupational title when Laborers traditionally performed that work. Contractors argue this is only a small component to their larger challenge that Department's requirement of Pipe Fitter wages does not reflect the wages traditionally and actually paid in Counties. We note, however, that Contractors' argument also states that Department must look to the type of workers used to perform certain work in Counties in order to determine what work classifications reflect work of a similar character. The trial court's characterization reflects this argument.

discussed above, Department enacted the Occupational Title Rule to assist in identifying work similar in character by classifying job tasks into defined occupational titles. *See AGC,* 898 S.W.2d 587, 590. "The type of work reflected in each occupational title [in the Occupational Title Rule] is the same no matter where it is performed [in Missouri] or how large or small the public works project is." *AGC,* 898 S.W.2d at 591.

The Occupational Title Rule did not change how Department calculates prevailing wages. *AGC,* 898 S.W.2d at 591. We find no merit in Contractors' assertions that Department's legal position is based on a view that wage classifications can be paid without regard to actual wages paid in the marketplace. Department is required to determine the prevailing wage based on "wages paid generally, in the locality in which the public works is being performed, to workmen engaged in work of a similar character...." Section 290.210(5).

Department calculates the prevailing wage for each occupational title in each locality by collecting reports from contractors, workers, public bodies, and other interested parties. *Heavy Constructors Ass'n v. Div. of Labor Standards,* 993 S.W.2d 569, 571 (Mo.App.1999). "The wage rate that has the highest number of hours worked within [a locality] for a particular occupational title is found to be the prevailing wage rate in that county for that occupational title."[15] *Id.*

Contractors' argument that Department has violated the Prevailing Wage Act by altering the definitions for "work of a similar character" to impose higher wages is unpersuasive. In *AGC,* the court found that the Occupational Title Rule was "not inconsistent with the letter or spirit of the [Prevailing Wage] Act," and thus upheld Department's ability to classify "work of a similar character" via the rule. *AGC,* 898 S.W.2d at 590–91, 595.[16] As the court noted in *AGC,* the Occupational Title Rule "contains several ways to resolve" any problems that may arise in classifying work of a similar character when local work practices may differ. *Id.* at 590. The Occupational Title Rule "permits any interested party to submit additional wage information to be used by the Department in establishing the prevailing wage rate for a particular occupational title." *Id.* at 591 (citing 8 CSR 30–3.060(4)). Further, it contains a provision that "allows any interested party to object to a prevailing wage determination on the grounds that an occupational title does not reflect the work done within a locality." *Id.* (citing 8 CSR 30–3.060(6)). Additionally, as discussed in Point I above, the wage rate application under the Occupational Title Rule will not necessarily result in increased costs to contractors or political subdivisions.

Contractors argue that payment of the Pipe Fitter wage rate for the work at issue would violate the Prevailing Wage Act because it would force payment of a prevailing wage not based on market rates actually paid in Counties. We note, however,

---

**15.** Where no evidence of wage rates paid in a locality for a particular occupational title is available, applicable collective bargaining agreements are used to establish the prevailing wage. *Heavy Constructors,* 993 S.W.2d at 571.

**16.** Contractors argue that this case is unlike *AGC* because they are now challenging that

the *application* of the Occupational Title Rule, not the rule itself, violates the Prevailing Wage Act. Contractors in this case, like the appellant contractors in *AGC,* however, argue that the Occupational Title Rule violates the Prevailing Wage Act because the occupational titles used by Department do not "reflect certain prevailing local work practices" in the localities at issue. *AGC,* 898 S.W.2d at 590.

that Contractors themselves maintain that they are challenging the first application of the Occupational Title Rule to the work at issue in Counties. Under the new work task descriptions of the Occupational Title Rule, Department has determined that payment of the Pipe Fitter wage rate is now appropriate. Contractors assert that Department's position does not consider the long-standing practice in Counties of using Laborers for the work at issue, but we find that argument unpersuasive. Although who does the work and the wage rate paid for that work can differ from county to county, the application of the occupational titles under the Occupational Title Rule is consistent throughout the state. *AGC*, 898 S.W.2d at 591.

Citing a 1959 Supreme Court of Missouri case, *City of Joplin v. Industrial Commission*, Contractors argue that the prevailing wage in a locality cannot be determined without looking to the actual workers used and the actual wage paid for the identical work in the marketplace. 329 S.W.2d 687 (Mo. banc 1959). "In [*City of Joplin* ] . . . the Court held the [Labor and Industrial Relations] Commission erred in making a final prevailing wage determination on a proposed municipal sewer improvement project without even considering the evidence presented . . . showing that the craft classifications and wage rates in sewer construction were different from those in heavy construction, the latter of which formed the exclusive basis for the Commission's wage determination." *AGC*, 898 S.W.2d at 591–92 (citing *City of Joplin*, 329 S.W.2d at 694, 695). The court in *City of Joplin* held that the "Commission was to consider 'any work in heavy construction that could reasonably be found to be similar' to the work to be performed on the proposed sewer project." *Id.* at 592 (citing *City of Joplin*, 329 S.W.2d at 695).

Contractors suggest that *City of Joplin* indicates that Department erred in classifying "work of a similar character" based on similarities of skills and tools. They assert that Department, therefore, erred when it classified outdoor pressurized piping system work in the Pipe Fitter occupational title, because that classification was based on similarities of skills and tools. They argue that *City of Joplin* requires Department to set the prevailing wage based on the actual wages paid and the type of workmen used, rather than based on a determination of what work utilizes similar skills.

The holding in *City of Joplin*, however, indicated that the prevailing wage should be set only after all applicable factors, including, but not limited to, the similarity of tools and skills were considered. *See* 329 S.W.2d at 695. Types of workmen generally used and types of work done, along with a comparison of wage rates within a given locality for such work, were among the other factors to be considered. *See id.* The determinations of the Labor and Industrial Relations Commission that were before the trial court here reflected that prevailing wage rates were calculated in the manner prescribed by *City of Joplin* even when occupational titles were applied. The Commission's orders reflect that the occupational title descriptions in the Occupational Title Rule consider work task similarity, different types of equipment used, and the actual activities of workers on construction projects.

Contractors assert that pursuant to the holding in *City of Joplin*, Department must consider wages actually paid in a particular locality when setting the prevailing wage, because otherwise they will not be utilizing the *actual* wage rate in their calculations. Contractors' assertions that Department's requirements in this case

are not based on actual wages paid, however, are unpersuasive.

Contractors are correct in advocating that in *Central Missouri Plumbing v. Plumbers Local 35* the court stated that the prevailing wage must be based on wages "actually paid" in the locality for the work. 908 S.W.2d 366, 371–72 (Mo.App. 1995). In that case, however, the Division of Labor Standards was found to have not based the prevailing wage rate on actual wages paid because it was calculating the prevailing wage rate "based upon a contorted formula using figures out of [a union's] collective bargaining agreement." *Id.* at 372. The court determined that use of this collective bargaining agreement formula produced an "arbitrary" and "contrived formula." *Id.* at 372. The court noted that the proper method to calculate the prevailing wage "is the mode method of statistical analysis[,]" whereby "the prevailing wage . . . is the most frequently paid actual wage for a person in a given trade." *Id.* at 371.

Unlike in *Central Missouri Plumbing,* there is no evidence in the instant case that Department based the required Pipe Fitter wage rate on anything other than the wage most frequently paid to Pipe Fitters in Counties. We find nothing in the Occupational Title Rule that indicates that actual wages paid in a county are not utilized in setting the prevailing wage. Under the Occupational Title Rule, Department sets the prevailing wage in a locality based on the actual wages for an occupational title fitting the job task at issue, rather than based on the actual wages paid when occupational title categories are not applied.

█ Contractors, though, assert that the actual wage calculations should be based on the Laborer wage rate to reflect the customary wage in Counties. We disagree. Department has the authority to classify outdoor pressurized pipe work under the occupational title of Pipe Fitter, and that classification is applied on a statewide basis. Because occupational titles are assigned on a statewide basis, the wage rates paid in a particular county may differ from that county's market rates when occupational titles are applied in calculating the prevailing wage. As the court noted in *Heavy Constructors,* "[i]t is possible that the prevailing wage, as determined by [Department], could be different from the actual [market] wages paid in a particular county for a specific work task. . . ." 993 S.W.2d at 572. Application of the occupational titles in the Occupational Title Rule, however, "will not negatively affect the prevailing wage rates nor result in setting the prevailing wage rate on a state-wide basis." *Id.* at 573. Prevailing wage rates remain locality-based even when the Occupational Title Rule is applied. *Id.* Regardless of what type of worker performs a task falling within a given occupational title, the locality-wide prevailing wage for that work will still be paid. *Id.*

Contractors further argue that Department's reliance on the Occupational Title Rule as authority to categorize outdoor pipe project work within the Pipe Fitter occupational title is misplaced. They argue that in *Essex II,* the court found that Department did not have the statutory authority to interject its opinion into a union jurisdictional dispute. *Essex II,* 815 S.W.2d at 138. Unlike in *Essex II,* however, Contractors have offered no evidence in this case that suggests Department's requirement that they pay Pipe Fitter wages is an attempt to resolve a union jurisdictional dispute regarding the work at issue.

What type of work is similar in character is not related to what type of workmen do the work. *AGC,* 898 S.W.2d at 591. As the Occupational Title Rule states, "[t]he

description of work designated for a particular occupational title is not intended to be jurisdictional in scope or nature, and is not to be construed as limiting or prohibiting workers from engaging in construction work falling within several occupational titles." 8 C.S.R. 30–3.060(1). Department requires Pipe Fitter wages based on its properly enacted rule that places outdoor pipe project work in the Pipe Fitter occupational title based on its consideration of what work is similar in character.

The trial court did not err in granting summary judgment in Department's favor on this issue, because Contractors did not show that Department's application of the occupational title of Pipe Fitter to the work at issue violated the Prevailing Wage Act. Contractors' second point is denied.

**Does Department's Interpretation Render Key Language Meaningless?**

■ Contractor's third point asserts that the trial court erred in upholding Department's interpretation of the General Laborer occupational title as applying to work on pipelines that are not pressurized when in operation. They argue that this interpretation renders key portions of the rule's language meaningless, and, therefore, unenforceable.

The current occupational title of General Laborer includes "work in connection with non-pressurized pipe lines, such as non[-]pressurized sewer, water, gas, gasoline, oil, drainage pipe, conduit pipe, tile and duct lines and all other non[-]pressurized pipe lines. . . ." 8 CSR 30–3.060(K)(2)(A). Department interprets this language to mean that the General Laborer occupational title applies to work related to all pipelines that are not pressurized when in use, as distinguished from pressurized piping systems. It further asserts that it never included work on pressurized pipe within the General Laborer category.

Contractors argue that non-pressurized gas, gasoline, and oil pipelines do not exist and, therefore, assert that Department's interpretation renders meaningless that language in the occupational title definition. They argue Department's interpretation is invalid because when interpreting a statute or an administrative rule, "every word, clause, sentence, and section thereof should be harmonized and given meaning unless it conflicts with ascertained legislative intent." *Natural Res., Inc. v. Mo. Highway & Transp. Comm'n*, 107 S.W.3d 451, 457, n. 9 (Mo.App.2003) (citing *Cub Cadet Corp. v. Mopec, Inc.*, 78 S.W.3d 205, 214–15 (Mo.App.2002)).

The trial court found no error with Department's interpretation of the General Laborer occupational title based on its finding that "[u]nambigous provisions in regulations must be given their plain meaning." *Whiteman v. Del–Jen Constr., Inc.*, 37 S.W.3d 823, 829 (Mo.App.2001), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 2003 Mo. LEXIS 168 (Mo. banc 2003).

Contractors maintain that the trial court's decision was based on its rejection of an argument they did not raise. They allege they did not assert that the language of the General Laborer occupational title is ambiguous, but rather that it is rendered meaningless by Department's interpretation of the rule.

The trial court found that Department's application of the Occupational Title Rule was according to its plain language. It stated that the Occupational Title Rule clearly established that work on non-pressurized piping systems is to be paid at the General Laborer wage rate, while work on pressurized piping systems is to be paid at the Pipe Fitter wage rate. The trial court found the rule drafters' failure to consider whether non-pressurized gas, gasoline, or

oil piping system work existed did not defeat the plain intent of the rule. It, therefore, found that Department was entitled to summary judgment on this issue.

 We agree with the findings of the trial court. When the interpretation of an agency rule is at issue, this court must give deference to the agency's determination. *Willard v. Red Lobster,* 926 S.W.2d 550, 553 (Mo.App.1996). Additionally, administrative rules and regulations issued under the authority of a statute " 'should not be judicially invalidated except for weighty reasons and are to be sustained unless unreasonable and plainly inconsistent with the act.' " *Long v. Interstate Ready–Mix, L.L.C.,* 83 S.W.3d 571, 576 (Mo.App.2002) (quoting *AGC,* 898 S.W.2d at 590). A regulation will not be considered "unreasonable merely because of a subjective feeling that [it] is arbitrary. . . ." *Linton v. Mo. Veterinary Med. Bd.,* 988 S.W.2d 513, 517 (Mo. banc 1999). We do not find any language in the General Laborer occupational title that would render the rule unreasonable or inconsistent with the Prevailing Wage Act. There is no evidence that Department's interpretation of the General Laborer occupational title is contrary to the intended construction of its drafters. The plain language of the occupational title makes clear the intent to divide non-pressurized and pressurized piping system work into distinct occupational titles.

There was no error in granting Department summary judgment on this point. Contractors' third point is denied.

The trial court did not err in granting summary judgment in favor of Department. The decision of the trial court is affirmed.

GARY M. GAERTNER, SR., P.J., and ROBERT G. DOWD, JR., J., concur.